1
2
3
4
5
6
7
8
9
10

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
          jwilner@bursor.com

*Attorneys for Plaintiff*

11

## UNITED STATES DISTRICT COURT

12

## SOUTHERN DISTRICT OF CALIFORNIA

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BRITTANY MORRISON, individually
and on behalf of all others similarly
situated,

                    Plaintiff,

    vs.

YIPPEE ENTERTAINMENT, INC.,

                    Defendant.

Case No. **'24CV0797 H    KSC**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

# TABLE OF CONTENTS

**PAGE**

NATURE OF THE ACTION ................................................................ 1

PARTIES ........................................................................................... 2

JURISDICTION AND VENUE .......................................................... 2

FACTUAL ALLEGATIONS ............................................................... 3

    I.    History And Overview of the VPPA ...................................... 3

    II.   Defendant Is A Video Tape Service Provider ....................... 4

    III.  Defendant Knowingly Discloses Consumers' Personally Identifiable Information to Twilio ......................... 5

        A.   Testing Reveals That Defendant Illegally Shares Its Consumers' PII And Video Viewing Information With Third Parties ....................................................... 5

        B.   Overview Of The Segment API ...................................... 7

        C.   Defendant Discloses Users' PII And Video Viewing Information to Twilio .................................................... 8

            1.   Defendant Discloses Users' Full Names and Email Addresses to Twilio .................................. 8

            2.   Defendant Discloses Video Titles And Video IDs To Twilio .......................................... 9

        D.   Defendant Discloses PII to Twilio For The Purpose Of Marketing, Advertising, And Analytics ................... 11

    IV.  Plaintiff'S Experience .......................................................... 15

CLASS ALLEGATIONS ................................................................. 16

CAUSES OF ACTION .................................................................... 18

    Count I – Violation Of The VPPA, 18 U.S.C. § 2710 .................... 18

PRAYER FOR RELIEF .................................................................. 19

JURY TRIAL DEMANDED ............................................................ 20

Plaintiff Brittany Morrison ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Yippee Entertainment, Inc. ("Yippee" or "Defendant").  Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1.     This is a class action suit brought against Defendant for violating the Video Privacy Protection Act ("VPPA").

2.     The United States Congress passed the VPPA in 1988, seeking to confer onto consumers the power to "maintain control over personal information divulged and generated in exchange for receiving services from video tape service providers." S. Rep. No. 100-599, at 8.  "The Act reflects the central principle of the Privacy Act of 1974: that information collected for one purpose may not be used for a different purpose without the individual's consent."  *Id.*

3.     The VPPA prohibits "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider."  18 U.S.C. § 2710.

4.     Defendant owns and operates Yippee TV, a streaming service available specializing in "faith based shows" for children.  The streaming service is accessible from a website—yippee.tv (the "Website")[1]—or the Yippee TV mobile application (the "App").

5.     Ironically, Defendant boasts that on its Website, there are "[n]o ads" and "no algorithms."

---

[1] YIPPEE TV, https://www.yippee.tv/ (last accessed Apr. 6, 2024).

## A wholesome alternative to YouTube

No ads, no algorithms, no sassy attitudes. Just good shows your kids will actually want to watch including hand-picked YouTubers reviewed and screened by parents like you.

6. Yet, unbeknownst to Plaintiff and Class Members, Defendant knowingly and intentionally discloses its users' personally identifiable information—including a record of every video viewed by the user—to unrelated third parties to further its marketing and advertising objectives and increase revenue. Such conduct violates not only the privacy rights of Defendant's subscribers—Plaintiff and Class Members—but the VPPA as well.

7. Plaintiffs bring this action for damages and other legal and equitable remedies resulting from Defendant's violations of the VPPA.

## PARTIES

8. Plaintiff Brittany Morrison is a natural person and citizen of California who resides in Oceanside, California.

9. Defendant Yippee Entertainment, Inc. is a Georgia corporation with its principal place of business at 13600 Heritage Pkwy, Suite 200, Fort Worth, Texas 76177. Defendant develops, owns, and operates the Website and App, which are used throughout California and the United States.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under a law of the United States (the VPPA).

11. This Court also has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members, the

aggregate amount in controversy exceeds $5,000,000 exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

12.     This Court has personal jurisdiction over Defendant because Defendant collected and disseminated the personally identifiable information giving rise to this lawsuit in this District, Defendant conducts substantial business in this District, and the conduct giving rise to this action arises out of and relates to that business.

13.     Defendant derives substantial revenue from advertising its shows to its users in the state of California.  Through the collection of users' data, described above, Defendant is able to use advertising and content curation to target California residents.  This allows Defendant to increase its number of subscribers and revenue and allows it to collect and disclose more users' information.  Further, California residents pay for a subscription to Defendant's streaming services, and Defendant therefore derives substantial revenue from California.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in this District.

## FACTUAL ALLEGATIONS

### I.    HISTORY AND OVERVIEW OF THE VPPA

15.     The impetus for the VPPA began with President Ronald Reagan's nomination of Judge Robert Bork to the United States Supreme Court.  During the confirmation process, a movie rental store disclosed the nominee's rental history to the Washington City Paper which then published that record.  Congress responded by passing the VPPA, with an eye toward the digital future.  As Senator Patrick Leahy, who introduced the Act, explained:

> It is nobody's business what Oliver North or Pratik Bork or Griffin Bell or Pat Leahy watch on television or read or think about when they are home.  In an area of interactive television cables, the growth of computer checking and check-out counters, of security systems and telephones, all lodged together in computers, it would be relatively easy at some point to give a profile of a person and tell what they buy in a

> store, what kind of food they like, what sort of television programs they watch, who are some of the people they telephone. I think that is wrong.

S. Rep. 100-599, at 5-6 (internal ellipses and brackets omitted).

16.    In 2012, Congress amended the VPPA, and in so doing, reiterated the Act's applicability to "so-called 'on-demand' cable services and Internet streaming services [that] allow consumers to watch movies or TV shows on televisions, laptop computers, and cell phones." S. Rep. 112-258, at 2.

17.    The VPPA prohibits "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1). The VPPA defines personally identifiable information ("PII") as "information which identifies a person as having requested or obtained specific video materials or services from a video service provider." 18 U.S.C. § 2710(a)(3). A video tape service provider is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

## II.    DEFENDANT IS A VIDEO TAPE SERVICE PROVIDER

18.    Defendant provides a faith-based streaming service that is accessible through Defendant's Website and App. Specifically, Defendant provides prerecorded videos to "children and families" that are "rooted in faith."[2]

19.    The Website can be accessed throughout the United States and California.

20.    Yippee TV hosts a library of "1,000s of hours of faith filled series" for families to view together.[3]

21.    The Website was visited over 75,000 times in the last month alone.[4]

---

[2] *Id.*

[3] *Id.*

[4] WATCH.YIPPEE.TV, SIMILARWEB https://www.similarweb.com/website/watch.yippee.tv/#overview

---

22.    To watch any video on the Website or App, however, users need to pay a subscription fee of either $8 per month or $49 per year.  Video content is otherwise locked or not accessible to anyone browsing the Website the App:



23.    Thus, accessing Defendant's pre-recorded video content is contingent on paying Defendant a subscription fee (or, at least, signing up for a seven-day free trial, after which payment is necessary).

## III.    DEFENDANT KNOWINGLY DISCLOSES CONSUMERS' PERSONALLY IDENTIFIABLE INFORMATION TO TWILIO

### A.    Testing Reveals That Defendant Illegally Shares Its Consumers' PII And Video Viewing Information With Third Parties

24.    In March 2024, Plaintiff's counsel retained a private research company to review the App and conduct a dynamic analysis.  A "dynamic analysis" records the transmissions that occur from a user's device.

25.    The researchers tested what information (if any) was disclosed when a user watches a video on the Website and App.  The analysis revealed Defendant disclosed information to at least one third party that was sufficient to identify specific Class Members and the specific videos they watched.

26.    The analysis first established that Defendant incorporates at least one "application programming interface" ("API") into its Website and App.

27.    APIs "enable[] companies to open up their applications' data and functionality to external third-party developers, business partners, and internal departments within their companies."[5]

---

[5] APPLICATION PROGRAMMING INTERFACE (API), IBM, https://www.ibm.com/cloud/learn/api (last accessed Apr. 12, 2024).

28.    Defendant incorporates the Segment API, an API owned and operated by Twilio, into the Website and App.

29.    The dynamic analysis found that when a user views a video on the Website App, Defendant transmits information sufficient to permit an ordinary person to identify a specific person's video-viewing behavior to Twilio via the Segment API.

30.    Specifically, when a user views a video the on the Website or App, Defendant discloses to Twilio via the Segment API: (i) a user's full name (ii) a user's email address; (iii) a user's Segment ID; (iv) the video ID for the specific video viewed by the user; and (vi) the video title.

**Segment** is a Customer Data Platform (CDP), which means that it provide a service that simplifies collecting and using data from the users of your digital properties (websites, apps, etc).

We observed **Segment** obtaining:

**Video Information** in the form of:
- Video Name
- Video ID

**Personal Information** in the form of:
- Email
- Full Name

**Other Information** such as:
- User ID
- AAID (Android only)

iOS transmissions          Android transmissions

31.    The information disclosed by Defendant to Twilio is sufficient to permit an ordinary person to identify the specific Website or App user and which specific video the user watched.  Indeed, some of the information (full name and video title) overlaps with the prototypical Judge Bork example.

**B.    Overview Of The Segment API**

32.    Twilio is "a customer engagement platform used by hundreds of thousands of businesses and more than ten million developers worldwide to build unique, personalized experiences for their customers."[6]

33.    Twilio powers this platform through its Segment API, which offers "world-class customer data infrastructure, so [developers] can design hyper-personalized, omnichannel campaigns across all channels."[7]   In particular, once integrated into a developer's mobile application, the Segment API provides Twilio's

---

[6] WHAT IS TWILIO? AN INTRODUCTION TO THE LEADING CUSTOMER ENGAGEMENT PLATFORM, TWILIO, https://www.twilio.com/en-us/resource-center/what-is-twilio-an-introduction-to-the-leading-customer-engagement-platform (last accessed Apr. 12, 2024).

[7] TWILIO SEGMENT, https://segment.com/twilio/ (last accessed Mar. 19, 2024).

platform with "customer identification and segmentation,"[8] and it does this by "collecting and connecting data from other tools and aggregating the data to monitor performance, inform decision-making processes, and create uniquely customized user experiences."[9]

34.     As alleged in greater detail below, Defendant utilizes each and every one of these features of the Segment API in the App and sends their consumers' PII to Twilio through the Segment API in order to assist with Defendants' marketing, advertising, and analytics efforts.

**C.     Defendant Discloses Users' PII And Video Viewing Information to Twilio**

*1.     Defendant Discloses Users' Full Names and Email Addresses to Twilio*

35.     A user's full name is self-evidently personally identifiable as it is the means of identifying individuals in all aspects of their lives.

36.     An email address is a unique string of characters which designate an electronic mailbox.   As industry leaders,[10] trade groups,[11] and courts agree,[12] an ordinary person can use an email address to uniquely identify another individual.

---

[8] Ingrid Lunden, *Twilio Confirms It Is Buying Segment For $3.2b In An All-Stock Deal*, TECHCRUNCH (Oct. 12, 2020), https://techcrunch.com/2020/10/12/twilio-confirms-it-is-buying-segment-for-3-2b-in-an-all-stock-deal/.

[9] SEGMENT.IO DEFINED, INDICATIVE, https://www.indicative.com/resource/segment-io/ (last accessed Apr. 12, 2024).

[10] Allison Schiff, *Can Email Be The Next Big Online Identifier?*, AD EXCHANGER (Aug. 25, 2020), https://www.adexchanger.com/data-exchanges/can-email-be-the-next-big-online-identifier/ (quoting Tom Kershaw, CTO of Magnite, who said "[a]n email address is universally considered to be PII, so as such it can never be a valid identifier for online advertising").

[11] NETWORK ADVERTISING INITIATIVE, NAI CODE OF CONDUCT 19 (2019), https://thenai.org/wp-content/uploads/2021/07/nai_code2020.pdf (identifying email as PII).

[12] *See*, *e.g.*, *United States v. Hastie*, 854 F.3d 1298, 1303 (11th Cir. 2017) ("Email addresses fall within the ordinary meaning of information that identifies an individual. They can prove or establish the identity of an individual.").

---

37.    Indeed, there exists multiple services that enable anyone with internet access and a credit card to look up who owns a particular email address.[13]

38.    As the dynamic analysis establishes and as demonstrated below, when a user watches a video on the Website or App, Defendant discloses users' e-mail addresses and full names to Twilio via the Segment API (highlighted in blue below):

url: https://watch.yippee.tv/videos/633-eglon-meets-ehud
user_email: blimalamamana@gmail.com
user_id: 64513575
video_id: 3125817
session_id: 0f20ae66b67c155a30884b4c8f75bdfa
current_type: video
duration: 500
is_chromecast: 0
is_drm: 0
is_fullscreen: 0
is_live: 0
is_trailer: 0
seconds: 10
timecode: 20
collection_title: Season 1
video_title: #633 - Eglon Meets Ehud
name: Yippee - Faith filled shows! Watch VeggieTales now.
version: None
externalIds: {'collection': 'users', 'encoding': 'none', 'type': 'vimeo_id', 'id': '64513575'}
locale: en-US
timezone: America/New_York
name: Prairie Barrington
email: blimalamamama@gmail.com
vimeo_id: 64513575
path: /videos/633-eglon-meets-ehud

**Website Transmission**

(packet)  outbound to  api.segment.io:443 not encrypted at time
Wed Mar 13 2024 (1710343078.4975848) uuid
6950f468-628c-4225-bff7-34c250050438
--------------------------------
"timezone": "America/New_York",
"traits": {
"anonymousId": "C89375E7-13FC-452C-84D2-254D992CA5D9",
"email": "prairie8370gmail.com",
"name": "Patricia Anderson",
"userId": "54890158",
"vimeo_id": "54890158"
}

(packet) com.yippeeentertainment outbound to
api.segment.io:443 (35.163.144.222) encrypted at time Wed Mar
13 15:50:49.98 2024 (1710345049098) uuid
08e1c7ac-c800-4244-9af4-56cd1e1d0368_s5
--------------------------------
"device": {
"adTrackingEnabled": "true",
"advertisingId": "794da6d2-5cb6-473e-8780-39bf5bb188bb",
},
"timezone": "America/New_York",
"traits": {
"anonymousId": "02c124bf-0dff-465a-8a30-2d880d827122",
"email": "peopymay@vahoo.com",
"name": "Jeremy Burton",
"userId": "54533512"

**iOS Transmission (Left) and Android Transmission (Right)**

2.    *Defendant Discloses Video Titles And Video IDs To Twilio*

39.    Defendant discloses the full name of the videos viewed by the user on the Website.

---

[13] *See, e.g.*, BEENVERIFIED, www.beenverified.com (last accessed April 12, 2024).

40.     For example, the dynamic analysis was conducted while a pre-recorded video called "Eglon Meets Ehun," an episode of *Veggie Tales*, was played on the Website.  As demonstrated below (in yellow highlights), this is the title of the video pre-recorded played by the Website user, and the title of that pre-recorded video was transferred to Twilio.  This network traffic is transmitted when, and only when, a user actually watches a pre-recorded video, as opposed to when a user visits a page that the pre-recorded video is on, as indicated by the "event," "Video Content Playing":



41.     A substantially similar transmission occurs when a user watches a pre-recorded video on the App:



42.     Defendant also discloses to Twilio via the Segment API the video ID for the specific video watched by the user on the Website or App (example from the Website transmission listed below).  A video ID is a unique string of numbers which

identifies a particular video.  This identifier further allows Twilio to identify what video a user is watching.



43.     In sum, Defendant discloses information to Twilio that allows Twilio, let alone an ordinary person, to identify which specific user requested or obtained which specific video.  Accordingly, Defendant discloses personally identifiable information to third parties.

44.     Based on the above, it is abundantly clear that Defendant *intentionally* and *knowingly* discloses to Twilio, through the Segment API, its users' personally identifiable information.

45.     Common sense dictates that a sophisticated media producer like Defendant who includes APIs in its Website and App is fully aware of the scope of the data Twilio is collecting and is choosing to intentionally provide that data to Twilio.

46.     Indeed, Defendant needs to implement the Segment API into its App and Website and specifically configure the Segment API to collect data specific data.[14] Without this affirmative act by Defendant, the Segment API could not collect any data from Defendant's Website or App.

### D.     Defendant Discloses PII to Twilio For The Purpose Of Marketing, Advertising, And Analytics

47.     Defendant discloses personally identifiable information to Twilio so Twilio can help Defendant with marketing, advertising, and analytics.

48.     As alleged above, the Segment API is designed to analyze App data and marketing campaigns, conduct targeted advertising, and ultimately boost Defendant's revenue from its marketing campaigns.

---

[14] *See*, *e.g.*, A FULL SEGMENT IMPLEMENTATION, https://segment.com/docs/getting-started/04-full-install/.

49.     Twilio entices developers to integrate the Segment API by underscoring its signature feature: "Engage."  Formerly known as Personas, Engage "is a powerful personalization platform that helps you create unified customer profiles."[15]  Twilio creates these "unified customer profiles" by "tak[ing] event data from across devices and channels and intelligently merg[ing] it into complete user- or account-level profiles."[16]  Twilio then illustrates what developers, like Defendant, can expect:



50.     Twilio builds these personas through "Segment Identity Resolution." This process "merges the complete history of each customer into a single profile, no matter where they interact with your business."[17]

51.     The Segment Identity Resolution supports, among other identifiers, "cookie IDs, device IDs, emails, and custom external IDs," helping Twilio capture "a

---

[15] DOCUMENTATION, TWILIO, https://segment.com/docs/engage/.

[16] *Id.*

[17] PERSONAS IDENTITY RESOLUTION OVERVIEW, TWILIO, https://segment.com/docs/personas/identity-resolution/#:~:text=The%20Segment%20Identity%20Graph%20merges,they%20interact%20with%20your%20business (last accessed Mar. 20, 2024).

user's interaction across web, mobile, server and third party partner touch-points in real-time."[18]  The Segment Identity Resolution then combines these "multiple external IDs," into "one persistent ID,"[19] culminating into its offered Engage consumer profile:



52.    With Identity Resolution, Twilio associates a users' personal information with a corresponding Engage Profile on Twilio's platform.

53.    Twilio leverages these profiles to assist developers, like Defendant, to enhance their marketing, advertising, and analytics efforts.

54.    Defendant discloses users' PII to Twilio through the Segment API so Twilio can better target its marketing campaigns.  Defendant does this through Twilio's "Audience" feature, which "group[s] users or accounts based on event behavior and traits that Segment tracks."[20]

---

[18] *Id.*

[19] *Id.*

[20] ENGAGE AUDIENCE OVERVIEW, TWILIO, https://segment.com/docs/engage/audiences/.

55.    In other words, Audiences allows for targeted marketing at Engage profiles that fit specific parameters.  As explained below, Defendant builds these marketing campaigns through Twilio's analytics services.

56.    Defendant also discloses users' PII to Twilio, through the Segment API, so it can better target advertisements.  After Defendant discloses users' PII, Twilio compiles and transmits that information to other third parties that Defendant utilizes for targeted advertising.[21]    These third parties include Facebook, Google, and Salesforce.[22]  Twilio labels these companies "Segment Destinations," which are  tools that businesses use for personalization and marketing.[23]

57.    In this role, Twilio acts as a facilitator, compiling PII so developers can "personalize messages across channels, optimize ad spend, and improve targeting."[24]  When Twilio transmits PII to Facebook, for example, it sends "an expanded list of identifiers or traits to Facebook, so that Facebook can try to use these additional datapoints to match to their user profiles."[25]  The same goes for Google, with Twilio helping developers "run advertising campaigns without having to manually update the list of users to target in Adwords campaigns."[26]  Defendant utilizes Twilio to amplify its advertising campaigns.

58.    Defendant then builds marketing campaigns based on this analysis.  For Yippee, Defendant selects traits like "e-mails received" or "videos viewed" and sends distinct marketing e-mails and advertisements to users who have those traits.

---

[21] USING YOUR PERSONAS DATA, TWILIO, https://segment.com/docs/personas/using-personas-data/.

[22] Id.

[23] Id.

[24] Id.

[25] FACEBOOK CUSTOM AUDIENCES DESTINATION, TWILIO, https://segment.com/docs/connections/destinations/catalog/personas-facebook-custom-audiences/.

[26] Id.

---

59.     Twilio describes the above process as "building an Audience," meaning it "group[s] users or accounts based on event behavior and traits that Segment tracks."[27]    As an example, Twilio lets developers "create[e] an 'inactive accounts' audience that lists paid accounts with no logins in 60 days, developers can push the audience to your marketing and analytics tools."[28]

60.     In short, Defendant utilizes the Segment API to analyze user data, launch marketing campaigns, and target specific users or specific groups of users for advertisements.  All of this, especially in conjunction with Segment's marketing and advertising services, helps Defendant monetize its App and maximize revenue by collecting and disclosing as much PII as possible to Twilio via the Segment API

## IV.    PLAINTIFF'S EXPERIENCE

61.     In or about September 2023, Plaintiff Morrison created a Yippee TV account, paid for a Yippee TV subscription, and accessed Yippee TV on her web browser.

62.     Plaintiff Morrison used a web browser to access Yippee TV videos through her account until February 2024.  During that time, she regularly used her account to play pre-recorded videos for herself and her children.

63.     At all relevant times, Plaintiff Morrison never consented, agreed, or otherwise permitted Defendant to disclose her PII to third parties.

64.     Likewise, Defendant never gave Plaintiff Morrison the opportunity to prevent the disclosure of her PII to third parties.

65.     Nevertheless, each time Plaintiff Morrison accessed a video on the Website, Defendant disclosed her PII to Twilio via the Segment API.  Specifically, Defendant disclosed to Twilio via the Segment API Plaintiff Morrison's: (i) full name;

---

[27] ENGAGE AUDIENCES OVERVIEW, TWILIO, https://segment.com/docs/engage/audiences/.

[28] ENGAGE OVERVIEW, TWILIO, https://segment.com/docs/engage/ (last accessed Apr. 12, 2024).

(ii) email address; (iii) Segment user ID; and (iv) video-viewing information in the form of the video title and video ID for each specific video watched by Plaintiff Morrison, as well as the fact that Plaintiff Morrison actually watched a specific pre-recorded video.

66.    Using this information, Twilio was able to identify Plaintiff Morrison and attribute her video viewing records to an individualized profile of Plaintiff Morrison in its databases.  Indeed, even an ordinary person could identify Plaintiff Morrison and the videos she watched using the data Defendant disclosed to Twilio.    Plaintiff Morrison's PII was also used to create a user profile that included her activity on the App, which Defendant uses for marketing, advertising, and analytics purposes.

## CLASS ALLEGATIONS

67.    Plaintiff seeks to represent a class of similarly situated individuals defined as all persons who watched a pre-recorded video on the Website or App and had their PII transmitted to a third party (the "Class").

68.    Subject to additional information obtained through further investigation and discovery, the above-described Class may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

69.    **Numerosity (Fed. R. Civ. P. 23(a)(1)):**  At this time, Plaintiff does not know the exact number of members of the aforementioned Class.  However, given the popularity of the App, the number of persons within the Class is believed to be so numerous that joinder of all members is impractical.

70.    **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3)):** There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class that predominate over questions that may affect individual members of the Class include:

        (a)    whether Defendant disclosed and continues to disclose Plaintiff's and Class Members' PII, including their video viewing records, in violation of the VPPA;

(b)  whether Defendant's disclosures were done knowingly; and

(c)  whether Defendant disclosed Plaintiff's and the Class's PII without consent.

71.  **Typicality (Fed. R. Civ. P. 23(a)(3)):**  Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, watched videos on the Website and had her PII disclosed by Defendant to third parties.

72.  **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiff has retained and is represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation, including litigation concerning the VPPA and its state-inspired offspring.  Plaintiff and her counsel are committed to vigorously prosecuting this class action.  Moreover, Plaintiff is able to fairly and adequately represent and protect the interests of the Class.  Neither Plaintiff nor her counsel have any interest adverse to, or in conflict with, the interests of the absent members of the Class.  Plaintiff has raised viable statutory claims, or the type reasonably expected to be raised by members of the Class, and will vigorously pursue those claims.  If necessary, Plaintiff may seek leave of this Court to amend this Class Action Complaint to include additional representatives to represent the Class, additional claims as may be appropriate, or to amend the definition of the Class to address any steps that Defendant took.

73.  **Superiority (Fed. R. Civ. P. 23(b)(3)):** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable.  Even if every member of the Class could afford to pursue individual litigation, the court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.  Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from

1    multiple trials of the same factual issues.  By contrast, the maintenance of this action
2    as a class action, with respect to some or all of the issues presented herein, presents
3    few management difficulties, conserves the resources of the parties and of the court
4    system and protects the rights of each member of the Class.  Plaintiff anticipates no
5    difficulty in the management of this action as a class action.

### CAUSES OF ACTION

### COUNT I
**Violation Of The VPPA,**
**18 U.S.C. § 2710**

74.    Plaintiff Morrison incorporates the foregoing allegations as if fully set forth herein.

75.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

76.    Defendant is a "video tape service provider" as defined by the VPPA because it "engage[s] in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials," 18 U.S.C. § 2710(a)(4), inasmuch as it provides video (*i.e.*, "similar audio visual materials" under the VPPA's definition) to consumers via its App.

77.    Plaintiff and Class Members are "consumers" as defined by the VPPA because they paid for a subscription to Defendant's streaming service, which enabled Plaintiff and Class Members to watch pre-recorded videos provided by Defendant on either Defendant's Website or App.   Under the VPPA, therefore, Plaintiff and members of the Class are "subscribers" of "goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1).

78.    Plaintiff and members of the Class viewed videos using the Website or App.  During these occasions, Defendant disclosed Plaintiff's and Class Members' PII to Twilio via the Segment API.  Specifically, Defendant disclosed Plaintiff's and Class Members': (i) full names; (ii) email addresses; (iii) user IDs; and (iv) video-viewing

---

information in the form of the video title and video ID for each specific video watched by Plaintiff and Class Members, as well as the fact that Plaintiff and Class Members actually watched a specific pre-recorded video.

79.    The foregoing information constitutes "personally identifiable information" because it "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). Further, this information is sufficient to enable an ordinary person to identify which specific user watched which specific video for Plaintiff and all Class Members.

80.    Defendant's disclosures of Plaintiff's and Class Members' PII to Twilio via the Segment API was done "knowingly" as proscribed by the VPPA. 18 U.S.C. § 2710(a)(1). Nor were Defendant's disclosures made in the "ordinary course of business" as the term is defined by the VPPA. In particular, Defendant's disclosures to Twilio were not necessary for or incident to "debt collection activities, order fulfillment, request processing, [or] transfer of ownership." 18 U.S.C. § 2710(a)(2).

81.    Plaintiff Class Members did not provide Defendant with any form of consent—either written or otherwise—to disclose their PII to third parties.

82.    On behalf of herself and the Class, Plaintiff seeks: (i) declaratory relief; (ii) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with VPPA's requirements for protecting a consumer's PII; (iii) statutory damages of $2,500 for each violation of the VPPA pursuant to 18 U.S.C. § 2710(c); and (iv) reasonable attorneys' fees and costs and other litigation expenses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks a judgment against Defendant, individually and on behalf of all others similarly situated, as follows:

(a)    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff Morrison as the

representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b)    For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c)    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)    An award of statutory damages to the extent available;

(e)    For punitive damages, as warranted, in an amount to be determined at trial;

(f)    For prejudgment interest on all amounts awarded;

(g)    For injunctive relief as pleaded or as the Court may deem proper; and

(h)    For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated: May 3, 2024                Respectfully submitted,

                                **BURSOR & FISHER, P.A.**

                                By: */s/ L. Timothy Fisher*
                                    L. Timothy Fisher

                                L. Timothy Fisher (State Bar No. 191626)
                                Joshua R. Wilner (State Bar No. 353949)
                                1990 North California Blvd., Suite 940
                                Walnut Creek, CA 94596
                                Telephone: (925) 300-4455
                                Facsimile:  (925) 407-2700
                                E-mail: ltfisher@bursor.com
                                        jwilner@bursor.com

                                *Attorneys for Plaintiff*