**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
jwilner@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

BRITTANY MORRISON, individually and on behalf of all others similarly situated,

Plaintiff,

v.

YIPPEE ENTERTAINMENT, INC.,

Defendant.

Case No. 3:24-cv-00797-MMA-KSC

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Date: To be set by Court
Time: To be set by Court
Courtroom: 3C
Judge: Hon. Michael M. Anello

# TABLE OF CONTENTS

PAGE


INTRODUCTION ........ 1

LEGAL STANDARD ........ 2

ARGUMENT ........ 2

I. Plaintiff Was Not On Notice Of The Vimeo Terms ........ 2

A. The Ninth Circuit's Binding Decision In *Berman* And The District Court's Analogous Decision In *Sadlock* Should Dictate The Outcome Here ........ 3

B. The Hyperlink To The Vimeo Terms Was Too Inconspicous To Put Plaintiff On Notice ........ 7

1. The Hyperlink Was On A Cluttered Page With Other, More Prominent Elements ........ 8

2. The Hyperlink Is Buried Within A Large Paragraph That Details Other Terms ........ 9

3. The Hyperlink Is In The Smallest Text On The Page ........ 10

4. The Mere Use Of A Different Color For A Hyperlink Is Insufficient ........ 10

C. Defendant's Arguments And Authorities Are Unpersuasive ........ 11

II. Defendant Has Not Met Its Burden To Show It Can Enforce The Vimeo Terms ........ 12

A. Defendant Is Not Entitled To Equitable Estoppel ........ 13

B. Defendant Is Not A Third-Party Beneficiary To The Vimeo Terms ........ 16

1. The Vimeo Terms Were Not "Expressly Intended" To Benefit Defendant ........ 17

2. A "Motivating Purpose" Behind The Vimeo Terms Was Not To Benefit Defendant ........ 19

3. Permitting Defendant To Enforce The Vimeo Terms Is Not "Consistent With The Objectives Of The Contract And The Reasonable Expectations Of The Contracting Parties" ........................ 19

III. Defendant Has Not Met Its Burden To Show Plaintiff's Claims Are Encompassed By The Arbitration Clause ............................................. 20

A. Arbitrability Should Be Decided By The Court .......................... 21

B. Plaintiff's VPPA Claim Exists Independently Of—And Therefore, Does Not Relate To—The Vimeo OTT Player ....................................................................... 23

CONCLUSION ......................................................................................... 25

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES


*Adibzadeh v. Best Buy, Co.*,
2021 WL 4440313 (N.D. Cal. Mar. 2, 2021) .......... 11, 12

*Bentley v. Control Grp. Media Co., Inc.*,
2020 WL 3639660 (S.D. Cal. July 6, 2020) .......... 16

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .......... passim

*Burzdak v. Universal Screen Arts, Inc.*,
2021 WL 3621830 (N.D. Cal. Aug. 16, 2021) .......... 8, 9

*Caine v. BMW of N. Am., LLC*,
596 F. Supp. 3d 1244 (S.D. Cal. 2021) .......... 19

*Chiron Corp. v. Ortho Diagnostic Sys.*,
207 F.3d 1126 (9th Cir. 2000) .......... 2

*Colgate v. JUUL Labs, Inc.*,
402 F. Supp. 3d 728 (N.D. Cal. 2019) .......... 3, 10

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
990 F.3d 173 (2d Cir. 2021) .......... 24

*Cullinane v. Uber Tech., Inc.*,
893 F.3d 53 (1st Cir. 2018) .......... 9

*Doe v. Princess Cruise Lines, Ltd.*,
657 F.3d 1204 (11th Cir. 2011) .......... 24

*Ellington v. Eclipse Recreational Vehicles*,
2022 WL 72351 (9th Cir. Jan. 7, 2022) .......... 14

*Engalla v. Permanente Med. Grp., Inc.*,
15 Cal. 4th 951 (1997) .......... 20

*Faire Wholesale, Inc. v. Tundra, Inc.*,
2023 WL 8586681 (N.D. Cal. Dec. 8, 2023) .......... 22

*Faucett v. Move, Inc.*,
2024 WL 2106727 (C.D. Cal. Apr. 22, 2024) .......... 14

*Guisinger v. Keystone RV Co.*,
2024 WL 3384211 (9th Cir. July 12, 2024) .......... 13, 15

*Howard v. Goldbloom*,
30 Cal. App. 5th 659 (2018) .......... 25

*Hunt v. Meta Platforms, Inc.*,
2024 WL 2503118 (N.D. Cal. May 24, 2024) .......... 16

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) .......... passim

*Jensen v. U-Haul Co. of Cal.*,
18 Cal. App. 5th 295 (2017) .......... 16, 18

*Jones v. Halliburton Co.*,
583 F.3d 228 (5th Cir. 2009) .......... 24

*Kramer v. Toyota Motor Corp.*,
705 F.3d 1122 (9th Cir. 2013) .......... 21

*Lien v. City of San Diego*,
2021 WL 2072385 (S.D. Cal. May 24, 2021) .......... 18

*Lim v. TForce Logistics, LLC*,
8 F.4th 992 (9th Cir. 2021) .......... 22

*Maree v. Deutsche Lufthansa AG*,
2021 WL 267853 (C.D. Cal. Jan. 26, 2021) .......... 9, 10

*Maynez v. Walmart, Inc.*,
479 F. Supp. 3d 890 (C.D. Cal. 2020) .......... 11

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) .......... 11

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) .......... 2

*Murphy v. DirecTV, Inc.*,
724 F.3d 1218 (9th Cir. 2013) .......... 13, 17, 18

*Ngo v. BMW of N. Am., LLC*,
23 F.4th 942 (9th Cir. 2022) .......... 17

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016) .......... 9, 12

*Oberstein v. Live Nation Entertainment, Inc.*,
60 F.4th 505 (9th Cir. 2023) .......... 11

*Oberstein v. Live Nation Entertainment, Inc.*,
2021 WL 4772885 (C.D. Cal. Sept. 20, 2021) .......... 11

*Pandolfi v. AviaGames, Inc.*,
2024 WL 3558853 (N.D. Cal. July 26, 2024) .......... 23

*Patterson v. Jump Trading LLC*,
2024 WL 49055 (N.D. Cal. Jan. 4, 2024) .......... 21, 22

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
388 U.S. 395 (1967) .......... 20

*Rajagopalan v. NoteWorld, LLC*,
718 F.3d 844 (9th Cir. 2013) .......... 1, 18

*Rice v. Downs*,
248 Cal. App. 4th 175 (2016) .......... 20

*Rocha v. Urban Outfitters, Inc.*,
2024 WL 393486 (N.D. Cal. Feb. 1, 2024) .......... 8, 9, 12

*Sadlock v. Walt Disney Co.*,
2023 WL 4869245 (N.D. Cal. July 31, 2023) .......... passim

*Safley v. BMW of N. Am., LLC*,
2021 WL 409722 (S.D. Cal. Feb. 5, 2021) .......... 22

*Sandquist v. Lebo Automotive, Inc.*,
1 Cal. 5th 233 (2016) .......... 20, 25

*Scriber v. Ford Motor Co.*,
2023 WL 7348461 (S.D. Cal. Nov. 7, 2023) .......... 15, 17

*SEIU Local 121RN v. Los Robles Regional Med. Ctr.*,
976 F.3d 849 (9th Cir. 2020) .......... 21

*Smith v. Google, LLC*,
2024 WL 1171653 (N.D. Cal. Mar. 19, 2024) .......... 14, 15, 16, 20

*Soltero v. Precise Distribution, Inc.*,
102 Cal. App. 5th 887 (2024) .......... 13, 14, 15, 16

*Stafford v. Rite Aid Corp.*,
998 F.3d 862 (9th Cir. 2021) .......... 14

*Strehl v. Guitar Center, Inc.*,
2023 WL 9700041 (C.D. Cal. Nov. 3, 2023) .......... 10, 12

*Swift v. Zynga Game Network, Inc.*,
805 F. Supp. 2d 904 (N.D. Cal. 2011) .......... 11

*Tejon v. Zeus Networks, LLC*,
2024 WL 1293757 (S.D. Fla. Mar. 26, 2024) .......... 9

*United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*,
871 F.3d 791 (9th Cir. 2017) .......... 24

*Vasquez v. SaniSure, Inc.*,
101 Cal. App. 5th 139 (2024) .......... 1, 2

*Wilson v. Hatch Bank*,
2024 WL 1355492 (S.D. Cal. Mar. 29, 2024) .......... 17

*Wilson v. Redbox Automated Retail, LLC*,
448 F. Supp. 3d 873 (N.D. Ill. 2020) .......... 10

*Young v. ByteDance Inc.*,
700 F. Supp. 3d 808 (N.D. Cal. 2023) .......... 22

Plaintiff Brittany Morrison ("Plaintiff") respectfully submits this opposition to Defendant Yippee Entertainment, Inc.'s ("Defendant") Motion to Compel Arbitration (ECF No. 13-1) (the "Motion" or "MTC").

## INTRODUCTION

Defendant claims it cares about consumer privacy. *See* Compl. ¶ 5. Really, Defendant just values its own. That is because, rather than facing Plaintiff's clearly meritorious VPPA claim in open court, Defendant seeks to push Plaintiff's claims into the secrecy of private arbitration. But Defendant's Motion faces an uphill battle. The hyperlink Defendant contends Plaintiff was on notice of is buried in a multi-line paragraph, and at the bottom of a page with half-a-dozen form fields, myriad promotional elements, and several other paragraphs of text, which are all in larger font. Declaration of Joshua R. Wilner ("Wilner Decl.") ¶ 5. Further, that hyperlink does not even contain Defendant's terms of service. Rather, it is a link to *another company's* terms of service: Vimeo (the "Vimeo Terms"). Defendant has no authority under the doctrine of equitable estoppel or as a third-party beneficiary to enforce the Vimeo Terms, and any analysis starts with the presumption under California law that neither doctrine applies. And, even putting all of that aside, Plaintiff's claims are independent of the Vimeo OTT service and are therefore not encompassed by the arbitration clause.

Any of the aforementioned issues on their own would be enough to doom Defendant's Motion. Defendant has to overcome all three, and Defendant bears the burden of proof for each. *See Vasquez v. SaniSure, Inc.*, 101 Cal. App. 5th 139, 143 (2024). All the while, Defendant must face precedent from the Ninth Circuit and California appellate courts, as well as myriad cases in this Circuit and others, that undermine each of its positions. *See*, *e.g.*, *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856-57 (9th Cir. 2022) (finding no notice of hyperlink to terms containing arbitration clause); *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 846-48 (9th Cir. 2013) (declining to allow non-party to enforce arbitration agreement under the doctrine of equitable estoppel or as alleged third-party beneficiary); *Jackson v.*

*Amazon.com, Inc.*, 65 F.4th 1093, 1101-04 (9th Cir. 2023) (finding privacy claim fell outside of scope of arbitration clause). Defendant simply cannot jump through that many hoops.

For the following reasons, Defendant's Motion should be denied.

**LEGAL STANDARD**

The "first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate the dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). The court must determine: (1) whether there exists a valid agreement to arbitrate; and (2) if there is a valid agreement, whether the dispute falls within its terms. *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022). "The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence that an agreement to arbitrate a dispute exists." *Vazquez*, 101 Cal. App. 5th at 143 (cleaned up).

**ARGUMENT**

**I. PLAINTIFF WAS NOT ON NOTICE OF THE VIMEO TERMS**

Defendant claims that "the Terms, including the arbitration provision that Plaintiff assented to, are 'reasonably conspicuous,' and, therefore, valid." MTC at 7:9-10.[1] "To form a contract under … California law, the parties must manifest their mutual assent to the terms of the agreement." *Berman*, 30 F.4th at 855. "Website users are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be prominently displayed, not buried in fine print." *Id.* at 857. Thus, "[t]o avoid the unfairness of enforcing contractual terms that consumers never intended to accept, courts confronted with online agreements

[1] Defendant does not and cannot argue that Plaintiff had actual notice of the arbitration agreement.

such as those at issue here have devised rules to determine whether meaningful assent has been given." *Id.* at 856. "Unless the website operator can show that a consumer has actual knowledge of the agreement, an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; *and* (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Id.* Accordingly, when a hyperlink to an agreement is "not conspicuous enough to put [plaintiffs] on inquiry notice," then the agreement is not binding. *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 765 (N.D. Cal. 2019).

"[T]he onus must be on website owners to put users on notice of the terms to which they wish to bind consumers" as "consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound." *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1100 (9th Cir. 2023). Thus, the burden is on the party "seeking arbitration to show that it provided notice … and that there was mutual assent to the contractual agreement to arbitrate." *Id.* at 1099. Defendant cannot meet its burden to show Plaintiff was on notice of the Vimeo Terms.

### A. The Ninth Circuit's Binding Decision In *Berman* And The District Court's Analogous Decision In *Sadlock* Should Dictate The Outcome Here

Two cases should guide this Court's analysis. *First*, in the Ninth Circuit's binding decision in *Berman*, the Ninth Circuit evaluated the exact question before the Court here: "[u]nder what circumstances can the use of a website bind a consumer to a set of hyperlinked 'terms and conditions' that the consumer never saw or read?" *Berman*, 30 F.4th at 853. The webpages in *Berman* containing the hyperlinks at issue looked like this:

//

//




*Id.* at 859 (Appendix A).




*Id.* at 861 (Appendix B).

In *Berman*, similar to here, the defendants argued that "by clicking on the 'continue' buttons, [the plaintiffs] had agreed to the hyperlinked terms and conditions, including the mandatory arbitration provision." *Id.* at 854. The Ninth Circuit disagreed, holding "the design and content of the webpages [the plaintiffs] visited did not adequately call to their attention [] the existence of the terms and conditions…." *Id.* at 858. Specifically:

> [t]he text disclosing the existence of the terms and conditions … is printed in a tiny gray font considerably smaller than the font used in the surrounding website elements, and indeed in a font so small that it is barely legible to the naked eye. The comparatively larger font used in all of the surrounding text naturally directs the user's attention everywhere else. And the textual notice is further deemphasized by the overall design of the webpage, in which other visual elements draw the user's attention away from the barely readable critical text.

*Id.* at 856-57 (cleaned up); *see also id.* at 857 ("Simply underscoring words or phrases, as in the webpages at issue here, will often be insufficient to alert a reasonably prudent user that a clickable link exists.").

*Second*, the district court in *Sadlock v. Walt Disney Co.*, 2023 WL 4869245, at *10 (N.D. Cal. July 31, 2023), evaluated a hyperlink based on analogous circumstances to here and found the sign-up screen "failed to provide reasonably conspicuous notice of the Subscriber Agreement." The sign-up screen in *Sadlock* looked incredibly similar to sign-up screen here:

//

//

//

//

//

//

//




*Sadlock*, 2023 WL 4869245, at *9. Applying *Berman*, the court found the aforementioned screen failed to provide sufficient notice because:

- The Subscriber Agreement is not mentioned at all until, in essence, the bottom of the screen.

- The paragraph that contains the reference to the Subscriber Agreement is in small font. Furthermore, comparatively, that font size is smaller than that used for other text in the payment webpage.

…

- The hyperlink to the "Subscriber Agreement" is buried in six lines of text and is located five lines away from the "Agree and Subscribe" button.

- There are a number of other elements on the screen that distract from the reference to the Subscriber Agreement … Notably, these elements are all in larger size font and employ design elements such as bolding to catch the eye. Furthermore, the bulk of the remaining screen is devoted to payment for the service being purchased.

*Id.*, at *9-10.

**B. The Hyperlink To The Vimeo Terms Was Too Inconspicous To Put Plaintiff On Notice**

Here, the sign-up page on Defendant's sign-up screen (with the "Read More" button clicked) looks like this:



Wilner Decl. ¶ 5.[2] The hyperlink to the Vimeo Terms bears many of the same hallmarks of the hyperlinks found inconspicuous in *Berman* and *Sadlock*, among other authorities.

*1. The Hyperlink Was On A Cluttered Page With Other, More Prominent Elements*

Defendant's hyperlink appears on a cluttered page with "number of other elements … that distract from the reference to the [Vimeo Terms]," which "are all in larger size font and employ design elements such as bolding to catch the eye." *Sadlock*, 2023 WL 4869245, at *10. For instance, the webpage includes options for monthly versus yearly payments, a "Read More" button that unspools into three paragraphs of text, various emoji icons, a checkbox to subscribe to Defendant's newsletter, and fields for "payment for the service being purchased." *Id*. Moreover, a user needs to scroll down to the bottom of the page for the hyperlink to the Vimeo Terms to even appear on the screen (albeit, with no notice to the user). Wilner Decl. ¶ 4; *see also Sadlock*, 2023 WL 4869245, at *9.

All of these elements "draw the user's attention away from the barely readable critical text." *Berman*, 30 F.4th at 857; *see also*, *e.g.*, *id.* ("The comparatively larger font used in all of the surrounding text naturally directs the user's attention everywhere else."); *Rocha v. Urban Outfitters, Inc.*, 2024 WL 393486, at *5 (N.D. Cal. Feb. 1, 2024) ("[T]he Court agrees with Rocha that the page where Urban Outfitters includes the disclosure … contains other information that is more likely to draw a consumer's attention."); *Burzdak v. Universal Screen Arts, Inc.*, 2021 WL 3621830, at *6 (N.D. Cal. Aug. 16, 2021) ("[V]isual prominence – through bolding, a different color, and/or capitalization – is given to other text, including 'Free Shipping,' and thus attention is

[2] On a web browser with the default 100% zoom, the entire sign-up screen is not visible at once. Wilner Decl. ¶¶ 3-4. To capture the entire sign-up screen at once, Plaintiff's counsel needed to save the webpage as a PDF at 58% size. *Id.* ¶ 5. Moreover, the image cited in Defendant's Motion is a zoomed-in version of the hyperlink and does not accurately depict how the webpage appears as such. MTC at 4:5-13; *see also* Wilner Decl. ¶ 6.

diverted away from the Terms of Use."); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 237 (2d Cir. 2016) (hyperlink not conspicuous where on a page where "various text is displayed in at least four font sizes and six colors … alongside multiple buttons and promotional advertisements" and "the presence of customers' personal address, credit card information, shipping options, and purchase summary are sufficiently distracting so as to temper whatever effect the notification has"); *Cullinane v. Uber Tech., Inc.*, 893 F.3d 53, 63 (1st Cir. 2018) ("The inclusion of the additional payment option and the placement of a large blue PayPal button in the middle of the screen were more attention-grabbing and displaced the hyperlink to the bottom of the screen.").

### *2. The Hyperlink Is Buried Within A Large Paragraph That Details Other Terms*

Defendant's "hyperlink … is buried in [eight] lines of text and is located [eight] lines away from the ['Start Subscription'] button." *Sadlock*, 2023 WL 4869245, at *10; *see also Maree v. Deutsche Lufthansa AG*, 2021 WL 267853, at *4 (C.D. Cal. Jan. 26, 2021) ("Expedia.com's Terms of Use hyperlink appears on a cluttered page nestled between several lines of extraneous, colored and bolded text."); *Rocha*, 2024 WL 393486, at *5 ("[A]s in *Berman*, the disclosure is sandwiched between other larger elements: a considerably larger 'place order' box and larger, darker text with the option to enter a 'promo code.'"). Moreover, although this paragraph appears near the "Start Subscription" button, "the value of the visual proximity is reduced by the fact that the reference to the Terms of [Service] is buried in a relatively lengthy paragraph that largely focuses on" payment and autorenewal. *See Burzdak*, 2021 WL 3621830, at *6; *see also Tejon v. Zeus Networks, LLC*, --- F. Supp. 3d ---, 2024 WL 1293757, at *3 (S.D. Fla. Mar. 26, 2024) (no notice of hyperlink where text near hyperlink "suggest[s] to a user that once they subscribe and read the language underneath the subscription buttons, the user has considered all relevant conditions to the subscription, and the subscription process is over."). In any event, "even close proximity of the hyperlink to relevant buttons users must click on—without more—is

insufficient to give rise to constructive notice." *Berman*, 30 F.4th at 858. Indeed, the hyperlink that is closest to the "Start Subscription" button is one to Google's Terms of Service, which likewise distracts from notice of the Vimeo Terms hyperlinks.

### 3. *The Hyperlink Is In The Smallest Text On The Page*

Defendant's hyperlink is also "considerably smaller than the font used in the surrounding website elements, and indeed in a font so small that it is barely legible to the naked eye." *Berman*, 30 F.4th at 856-57; *see also Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 766 (N.D. Cal. 2019) (hyperlinks insufficient where "they are the same size as the sentence they are in"); *Sadlock*, 2023 WL 4869245, at *9 ("[C]omparatively, that font size is smaller than that used for other text in the payment webpage.").

### 4. *The Mere Use Of A Different Color For A Hyperlink Is Insufficient*

Finally, the hyperlink's sole distinguishing feature is its coloring. As courts have repeatedly found, simply changing the color of text to designate a hyperlink is not itself sufficient for notice. *Colgate*, 402 F. Supp. 3d at 765 ("I am not convinced that the mere change in color of the hyperlinks, without more, is enough."); *Wilson v. Redbox Automated Retail, LLC*, 448 F. Supp. 3d 873, 885 (N.D. Ill. 2020) ("Using a different color for the hyperlink from the surrounding text, by itself, is not sufficient to render the hyperlink reasonably conspicuous"); *Berman*, 30 F.4th at 854 ("Simply underscoring words or phrases, as in the webpages at issue here, will often be insufficient to alert a reasonably prudent user that a clickable link exists."); *Strehl v. Guitar Center, Inc.*, 2023 WL 9700041, at *7 (C.D. Cal. Nov. 3, 2023) ("[T]he color of the hyperlink cannot offset and compensate for the size of the hyperlink or the distance between the statement containing the hyperlink and the second button."); *Maree*, 2021 WL 267853, at *4 (finding hyperlink was inconspicuous where, although a different color, the hyperlink was "not highlighted, underlined, in all capital letters, or displayed inside of a conspicuous and clickable box").

### C. Defendant's Arguments And Authorities Are Unpersuasive

Defendant's cases on this point are distinguishable. In *Oberstein v. Live Nation Entertainment, Inc.*, 60 F.4th 505, 516 (9th Cir. 2023), unlike here, the hyperlink was displayed "above or below the action button" at least three times "before purchasing tickets." For instance, the hyperlink was displayed on one visually simplistic page asking a user to sign in, and another where the hyperlink was only one line above the "Place Order" button. *Oberstein v. Live Nation Entertainment, Inc.*, 2021 WL 4772885, at *2 (C.D. Cal. Sept. 20, 2021), *aff'd*, 60 F.4th 505 (9th Cir. 2023). This is unlike the instant action, where the hyperlink is displayed once on a cluttered page with multiple promotional elements and is buried in a lengthy paragraph of text eight lines above the button the user must click on.

In *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 81-82 (2d Cir. 2017), the hyperlink was bolded, underlined, in a different color, and in all capital letters. Moreover, unlike here, "[t]he entire screen [was] visible at once, and the user does not need to scroll beyond what is immediately visible to find notice of the Terms of Service." *Id.* at 78. Notably, the *Meyer* court also distinguished the hyperlink in that case from that in *Nicosia*, which Plaintiff cites above as analogous to the facts herein. *Meyer*, 868 F.3d at 78.

In *Maynez v. Walmart, Inc.*, 479 F. Supp. 3d 890, 895 n.2 (C.D. Cal. 2020), unlike the hyperlink was bolded, underlined, appeared in a different color from the surrounding text, and was in a single sentence above the "Place Order" button. The sign-up page in *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904 (N.D. Cal. 2011), was also visually simplistic, with the hyperlink nestled in two sentences directly below the sign-up button and no promotional elements surrounding it. *Swift v. Zynga Game Network, Inc.*, Case No. 3:09-cv-5443, ECF No. 78 at 2 (N.D. Cal. July 12, 2011). And again, in *Adibzadeh v. Best Buy, Co.*, 2021 WL 4440313 (N.D. Cal. Mar. 2, 2021), the hyperlink was presented on a visually simplistic screen asking the user to sign in, was in a different color than the surrounding text, and was contained in a

single sentence. *Adibzadeh v. Best Buy, Co.*, Case No. 4:20-cv-6257, ECF No. 16-4 at Ex. A (Nov. 6, 2020).

Separately, Defendant argues the "transactional context of the parties' dealings" supports notice because "the Yippee subscription process clearly contemplated some sort of continuing relationship." MTC at 8:19-21 (cleaned up). The transactional nature of the Parties' dealings—which existed in *every case* Plaintiff cited above where no notice was found—does not change Defendant's obligation to "put users on notice of the terms to which they wish to bind consumers." *Berman*, 30 F.4th at 857 (cleaned up). And courts have repeatedly found "transactional" elements of a webpage like those present here to undermine notice. *See*, *e.g.*, *Sadlock*, 2023 WL 4869245, at *10 (no notice where "the bulk of the remaining screen is devoted to payment for the service being purchased"); *Strehl*, 2023 WL 9700041, at *7 ("[L]ike the statement in *Berman*, the one [containing the hyperlink] here … is in a smaller font (12 pixels) relative to the shipping and billing information (13 pixels) and the 'Complete Order' button (15 pixels).") (cleaned up); *Rocha*, 2024 WL 393486, at *5 ("The text headings for each section (contact information, payment information, delivery information, shipping, and order summary) are comparatively larger and have a darker font than the disclosure notice."); *Nicosia*, 834 F.3d at 237 ("[T]he presence of customers' personal address, credit card information, shipping options, and purchase summary are sufficiently distracting so as to temper whatever effect the notification has.").

In sum, Defendant has not met its burden to show Plaintiff was on constructive notice of the hyperlink to the Vimeo Terms, nor has Defendant argued Plaintiff was on actual notice of the same. Accordingly, Defendant cannot show Plaintiff assented to the arbitration clause.

## II. DEFENDANT HAS NOT MET ITS BURDEN TO SHOW IT CAN ENFORCE THE VIMEO TERMS

Even if Plaintiff was on notice of the hyperlink to the Vimeo Terms (she was not), Defendant's Motion would still need to be denied. That is because the terms

Defendant relies on are an agreement between the user "*and Vimeo.com, Inc.*," a completely separate company. Declaration of Cadeau Juraschek ("Juraschek Decl.") Ex. A (emphasis added). Defendant implicitly admits it is not a party to the Vimeo Terms. MTC at 11:26-28. And, nothing in the plain language of the arbitration clause specifically allows Defendant to enforce the clause. Juraschek Decl. Ex. A at § 10. On the contrary, the clause "sets forth a binding arbitration agreement between you *and Vimeo*." *Id.* (emphasis added).

Thus, "to avoid the general rule that one must be a party to an arbitration agreement to invoke it, California contract law must authorize [Defendant] to invoke the [] agreement as a nonsignatory." *Guisinger v. Keystone RV Co.*, 2024 WL 3384211, at *1 (9th Cir. July 12, 2024) (cleaned up). To wit, Defendant asserts two doctrines in support of its argument that it may compel arbitration based on the Vimeo Terms: equitable estoppel and third-party beneficiary. Neither is persuasive.

**A. Defendant Is Not Entitled To Equitable Estoppel**

Defendant argues "[g]iven Plaintiff's agreement to the Terms to obtain a Yippee subscription and to receive Yippee's content—without which Yippee would never have had the information that is the subject of Plaintiff's claim—Plaintiff is equitably estopped from controverting her agreement to the Terms to avoid arbitration of disputes arising under those Terms." MTC at 14:15-19. As an initial matter, Defendant has not shown that Plaintiff was on notice of, and therefore, that Plaintiff agreed to Vimeo Terms. Argument § I, *supra*. Regardless, Defendant cannot rely on the doctrine of equitable estoppel to enforce the arbitration clause in the Vimeo Terms.

"[G]enerally only signatories to an arbitration agreement are obligated to submit to binding arbitration." *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013). "[I]f a plaintiff relies on the terms of an agreement to assert his or her claims against a nonsignatory defendant, the plaintiff may be equitably estopped from repudiating the arbitration clause of that very agreement." *Soltero v. Precise Distribution, Inc.*, 102 Cal. App. 5th 887, 893 (2024). However, "the doctrine is narrowly construed."

*Faucett v. Move, Inc.*, 2024 WL 2106727, at *5 (C.D. Cal. Apr. 22, 2024). "The plaintiff's actual dependence on the underlying contract in making out the claim against the nonsignatory is always the sine qua non of an appropriate situation for applying equitable estoppel." *Soltero*, 102 Cal. App. 5th at 893 (cleaned up). "However, if the plaintiffs' claims merely reference an agreement with an arbitration clause, equitable estoppel will not warrant compelling arbitration." *Stafford v. Rite Aid Corp.*, 998 F.3d 862, 865-866 (9th Cir. 2021).

Here, Plaintiff's VPPA claim has nothing to do with the Vimeo Terms. Instead, Plaintiff's VPPA claim is entirely grounded in Defendant's disclosure of personally identifying information to a third-party service provider. Compl. ¶ 6. Indeed, Plaintiff was not on notice of the Vimeo Terms (Argument § I, *supra*), and Plaintiff specifically alleges Defendant *did not* procure her consent to disclose her personally identifiable information. Compl. ¶¶ 63-64. Likewise, Defendant could have (and indeed, did) disclose Plaintiff's personally identifiable information without any sort of agreement to the Vimeo Terms, and Plaintiff does not allege Defendant breached the Vimeo Terms as part of her VPPA claim.

Thus, Plaintiff's claims do not rely on the Vimeo Terms, and indeed, arise independently of them. *See*, *e.g.*, *Ellington v. Eclipse Recreational Vehicles*, 2022 WL 72351 (9th Cir. Jan. 7, 2022) ("Even if Ellington had no purchase agreement with [the signatory to the agreement], his implied warranty claims against [the nonsignatories] would remain unchanged."); *Smith v. Google, LLC*, --- F. Supp. 3d ---, 2024 WL 1171653, at *3 (N.D. Cal. Mar. 19, 2024) (declining to equitably estop plaintiffs where plaintiff "assert only statutory claims against Google, none of which relies directly on the terms of any written agreement between plaintiffs and H&R Block"); *Soltero*, 102 Cal. App. 5th at 893 ("Soltero is suing Precise for its alleged violations of Labor Code provisions governing meal and rest breaks, premium payments for missed meal and rest breaks, wage statements, and immediate payment of final wages upon separation of employment. Her complaint does not mention or

rely on any provision of her employment agreement with Real Time as a basis for imposing liability on Precise."); *Jackson*, 65 F.4th at 1103 ("Neither Amazon's motive nor the violation of any provision of this contract would be an element of any of Jackson's claims. The alleged misconduct would be wrongful even if there had been no contract.").

Moreover, it is of no import that Defendant uses the Vimeo OTT player for the videos on its mobile application and website. MTC at 13:16-17. "[I]t is not enough for an agreement to be one but-for causal link in a chain of events leading to the circumstances underlying a claim; the claim itself must stem from or be intertwined with the agreement." *Smith*, 2024 WL 1171653, at *3; *see also Guisinger*, 2024 WL 3384211, at *1 (noting "[t]he California Courts of Appeal have long rejected but-for causation as the relevant standard for" equitable estoppel). And here, Plaintiff's VPPA claim still has nothing to do with the Vimeo Terms, even if it were reliant on the Vimeo OTT player (it is not).

In any event, Plaintiff's claim would have existed regardless of which OTT platform Defendant used. *See Jackson*, 65 F.4th at 1102-03 ("[A]lthough membership in Jackson's proposed class would require participation in the Amazon Flex program, the controversy in this case is ultimately not about any characteristics or conduct of class members, but whether Amazon is indeed liable for wiretapping and invasion of privacy."); *see also Scriber v. Ford Motor Co.*, 2023 WL 7348461, at *6 (S.D. Cal. Nov. 7, 2023) (Anello, J.) ("[W]hat matters here is that Scriber and Harrigan own, or owned, these Ford-manufactured Vehicles, not that Plaintiffs entered into *these* Sale Contracts.") (emphasis in original). And, even if Plaintiff's claim depended on the Vimeo OTT player (it does not), Plaintiff's claim based on Defendant's disclosure of her personally identifiable information would still not rely on the Vimeo Terms, which is what is required for equitable estoppel. *See Soltero*, 102 Cal. App. 5th at 893. "[I]t is not enough that the plaintiff's complaint presumes the existence of a contract that contains an arbitration clause" without any reliance on the contract. *Id.* at 895.

Defendant's cited authorities do not salvage its argument. In *Hunt v. Meta Platforms, Inc.*, 2024 WL 2503118, at *3 (N.D. Cal. May 24, 2024), the plaintiff's claims were "founded in or bound up with the terms" because they specifically alleged "fraud arising from the agreements as one of the elements of his RICO claims."[3] Likewise, in *Bentley v. Control Grp. Media Co., Inc.*, 2020 WL 3639660, at *3 (S.D. Cal. July 6, 2020), the plaintiffs' claims were intertwined with the subscription agreement because the plaintiffs specifically alleged agreement to the terms and their claims were that "Defendants both deprived them of the benefit of what they paid to obtain and what they paid to make sure Defendants were aware of their duty under law." (Cleaned up). In other words, unlike here, the plaintiffs in *Bentley* alleged the defendant breached its agreement. *Id.*, at *1. By contrast, Plaintiff's claims here do not rely on and are completely independent of the Vimeo Terms.

Accordingly, Defendant cannot overcome the presumption against equitable estoppel because Plaintiff's claims are not dependent on, nor do they rely upon the Vimeo Terms.

### B. Defendant Is Not A Third-Party Beneficiary To The Vimeo Terms

Defendant also contends it may enforce the Vimeo Terms "as a third party beneficiary." MTC at 14:21. Not so.

"Third-party beneficiary theory is another exception to the usual rule that only a party to an arbitration agreement may enforce it." *Soltero*, 102 Cal. App. 5th at 898. "A third party beneficiary is someone who may enforce a contract because the contract is made expressly for his benefit." *Jensen v. U-Haul Co. of Cal.*, 18 Cal. App. 5th 295, 301 (2017) (cleaned up). "[T]o succeed under this theory, [Defendant] must prove that express provisions of the contract, considered in light of the 'relevant circumstances, show that (1) the third party would in fact benefit from the contract;

[3] Notably, the judge in *Hunt* was the same as the judge in *Smith*. As noted above, the *Smith* court rejected application of equitable estoppel in facts far more analogous to this action. *Smith*, 2024 WL 1171653, at *3.

(2) a motivating purpose of the contracting parties was to provide a benefit to the third party; *and* (3) permitting the third party to enforce the contract is consistent with the objectives of the contract and the reasonable expectations of the contracting parties." *Scriber*, 2023 WL 7348461, at *8 (emphasis added; internal quotations omitted). Defendant "bears the burden of proving that it is a third-party beneficiary." *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1233 (9th Cir. 2013). Defendant, cannot meet that burden as to any of these factors, let alone all three.

*1. The Vimeo Terms Were Not "Expressly Intended" To Benefit Defendant*

*First*, Defendant cannot show it would benefit from the contract. The Vimeo Terms are expressly an agreement "between you [the user] *and Vimeo.com, Inc.*," and the arbitration clause likewise "sets forth a binding arbitration agreement between you *and Vimeo*." Juraschek Decl. Ex. A (emphasis added); *id.* § 10 (emphasis added). Thus, the Vimeo Terms do not contemplate Defendant's involvement, nor do they expressly permit Defendant "to compel arbitration of disputes," as Defendant conclusively claims. MTC at 15:14-15. "Language limiting the right to compel arbitration to a specific [customer] and a specific [signatory] … means that extraneous third parties may not compel arbitration." *Scriber*, 2023 WL 7348461, at *9 (quoting *Ngo v. BMW of N. Am., LLC*, 23 F.4th 942, 948 (9th Cir. 2022)). This is especially so where, even if other provisions benefit Defendant, the language of the arbitration clause is expressly limited to users and Vimeo. *See Wilson v. Hatch Bank*, 2024 WL 1355492, at *6-7 (S.D. Cal. Mar. 29, 2024) ("Within the TOS, there are several instances where Defendant received rights and benefits … However, within the language of the Arbitration Clause, Hatch Bank's name is conspicuously absent … Hatch Bank's absence from the Arbitration Clause gives rise to a compelling inference from this arrangement … that the parties knew how to give enforcement powers to non-signatories when they wished to but chose not to do so here.") (cleaned up).

Moreover, "the mere fact that a contract results in benefits to a third party does not render that party a third party beneficiary." *Jensen*, 18 Cal. App. 5th at 302 (cleaned up). Further, an "indirect reference to a third party does not make the third party a beneficiary of the contract." *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013). "[R]ather, the parties to the contract must have expressly intended that the third party would benefit." *Murphy*, 724 F.3d at 1234. Thus, whether Defendant received any benefit from the Vimeo Terms is irrelevant to the question of whether the Vimeo Terms were intended to *expressly benefit* Defendant. The Vimeo Terms have no such intent on their face, and so Defendant cannot meet the first prong. *Id.* ("The terms of the Customer Agreement do not demonstrate that DirecTV intended to benefit Best Buy through the contract, let alone that its customers did. For one thing, the Customer Agreement never mentions Best Buy."). And "[t]o the extent the [Vimeo Terms are] ambiguous with respect to the parties' intent to benefit [Defendant], that rule of construction militates against concluding that [Defendant] is a third-party beneficiary." *Id.*

In addition, the Vimeo Terms actually provide one instance where Defendant may enforce the arbitration clause: if Defendant "agreed to resolve disputes with consumers through arbitration in its agreements with Vimeo." Juraschek Decl. Ex A § 10.7. Defendant submits no evidence that it made such an agreement with Vimeo (*see generally* Juraschek Decl.), nor may Defendant do so for the first time on reply. *See, e.g.*, *Lien v. City of San Diego*, 2021 WL 2072385, at *7 (S.D. Cal. May 24, 2021) (Anello, J.) ("The Court declines to consider this argument raised for the first time in the reply brief."). Indeed, Defendant's *own terms of use* do not require users to submit disputes to arbitration. TERMS OF USE, https://www.yippee.tv/terms-of-use. Thus, Defendant cannot show it is allowed to enforce the arbitration clause as a nonsignatory in the single instance actually contemplated by the Vimeo Terms.

*2. A "Motivating Purpose" Behind The Vimeo Terms Was Not To Benefit Defendant*

*Second*, for each of the above reasons, Defendant cannot show "a motivating purpose of the contracting parties" to the Vimeo Terms was to benefit Defendant. Indeed, many provisions of the Vimeo Terms expressly disavow any benefit to a third party like Defendant. For instance, Section 7 of the Vimeo Terms expressly disclaims any warranties by Vimeo with respect to "Any Producer's actions or omissions with respect to [users'] personal information," which include Plaintiff's VPPA claims. Juraschek Decl. Ex. A § 7. Similarly, Section 8 of the Vimeo Terms limits Vimeo's liability for "damages relating to any dispute between [users] and a producer [like Defendant]." *Id.* § 8. Provisions that limit Vimeo's liability with respect to the actions of producers like Defendant are drafted to benefit Vimeo, not Defendant. As such, Defendant cannot demonstrate a motivating purpose behind the Vimeo Terms was to benefit Defendant. *See Caine v. BMW of N. Am., LLC*, 596 F. Supp. 3d 1244, 1249 (S.D. Cal. 2021) ("BMW's briefing ignores the portion of the warranties section where the [signatory to the agreement] disclaims the vehicle's warranty and protects itself from unwanted claims. In other words, it is the [signatory], and not BMW that is the beneficiary of the warranties provision.").

*3. Permitting Defendant To Enforce The Vimeo Terms Is Not "Consistent With The Objectives Of The Contract And The Reasonable Expectations Of The Contracting Parties"*

Finally, Defendant cannot show that permitting it to enforce the Vimeo Terms "is consistent with the objectives of the contract and the reasonable expectations of the contracting parties." This especially cannot be true for Plaintiff and other users of Defendant's service, who were not on notice of, nor did they assent to the Vimeo Terms. Argument § I, *supra*. Nor is Plaintiff's claim dependent on the Vimeo Terms or the Vimeo OTT player in general. *See* Argument § II.A, *supra*; Argument § III, *infra*. Regardless, "it is not enough for an agreement to be one but-for causal link in

a chain of events leading to the circumstances underlying a claim; the claim itself must stem from or be intertwined with the agreement." *Smith*, 2024 WL 1171653, at *3. And it cannot be true of Vimeo, who expressly disclaimed any representations or warranties regarding Defendant's "actions or omissions with respect to [users'] personal information." Juraschek Decl. Ex. A § 7. As such, Defendant cannot meet the third requirement and cannot enforce the Vimeo Terms as a third-party beneficiary.

## III. DEFENDANT HAS NOT MET ITS BURDEN TO SHOW PLAINTIFF'S CLAIMS ARE ENCOMPASSED BY THE ARBITRATION CLAUSE

Even assuming Defendant has met its burden to show Plaintiff was on notice of and assented to the Vimeo Terms (it has not), and even assuming Defendant has met its burden to show it can enforce the Vimeo Terms through equitable estoppel or as a third party beneficiary (it has not), Defendant *still* has to show Plaintiff's claims fall within the scope of the arbitration clause.

"California law incorporates many of the basic policy objectives contained in the Federal Arbitration Act, including a presumption in favor of arbitrability and a requirement that an arbitration agreement must be enforced on the basis of state law standards that apply to contracts in general." *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 971-72 (1997) (cleaned up). However, "there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate." *Rice v. Downs*, 248 Cal. App. 4th 175, 185 (2016). Indeed, the California Supreme Court has mandated that where, as here, "the drafter of a form contract has prepared an arbitration provision whose application to a particular dispute is uncertain, ordinary contract principles require that the provision be construed *against the drafter's interpretation and in favor of the nondrafter's interpretation*." *Sandquist v. Lebo Automotive, Inc.*, 1 Cal. 5th 233, 248 (2016) (emphases added). These principles are consistent with the "equal footing" rule, which requires arbitration agreements to be "as enforceable as any other contract, *but not more so*." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967) (emphasis added).

With these principles in mind, Defendant cannot show Plaintiff's claims are encompassed by the arbitration clause.

**A. Arbitrability Should Be Decided By The Court**

As an initial matter, it is for the Court to decide whether Plaintiff's claims against Defendant, a third party to the Vimeo Terms, fall within the scope of the arbitration clause. As the Ninth Circuit has instructed, "courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *SEIU Local 121RN v. Los Robles Regional Med. Ctr.*, 976 F.3d 849, 853 (9th Cir. 2020) (cleaned up). In fact, the presumption is that silence or ambiguity must be construed against delegation. *See id*.

Here, there is no "clear and unmistakable evidence" that Plaintiff and Vimeo agreed to delegate issues of arbitrability to the arbitrator with regards to claims against third parties like Defendant. *Patterson v. Jump Trading LLC*, --- F. Supp. 3d ---, 2024 WL 49055, at *9 (N.D. Cal. Jan. 4, 2024) ("[T]he Court is reluctant to conclude that the parties intended to arbitrate all questions of arbitrability arising in any dispute they might have with any third party anywhere else in the world, as Jump suggests."). On this point, *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013), is determinative. In that case, the arbitration clause expressed delegated the question of arbitrability to an arbitrator. *Id.* at 1124 ("If either you or we elect, any claims or disputes arising out of this transaction, or relating to it, will be determined by binding arbitration and not by court action."). However, "[p]laintiffs only agreed to arbitrate arbitrability—or any other dispute—with the Dealerships because the arbitration clause is limited to claims between 'you and us'—*i.e.* Plaintiffs and the Dealerships." *Id.* at 1128. By contrast, "the arbitration agreements do not contain clear and unmistakable evidence that Plaintiffs and Toyota [the nonsignatory] agreed to arbitrate arbitrability." *Id.* at 1127. Accordingly, the Ninth Circuit found it was for the court to decide whether the dispute between the plaintiffs and Toyota (the non-signatory) belonged in arbitration.

So too here. The arbitration clause is "between you [the user] and Vimeo." Juraschek Decl. Ex. A § 10. The delegation clause, likewise, states: "Both you and Vimeo are entitled to fundamentally fair proceedings at every stage of the arbitration, including the hearing (if any). The arbitrator will decide all issues relating to the dispute, including the question of arbitrability…." Under such circumstances, there is not a "clear and unmistakable" intent by the parties to the Vimeo Terms to delegate the question of arbitrability to an arbitrator with regards to claims against third parties. *Patterson*, 2024 WL 49055, at *9 ("[T]he agreement between TFL and Mr. Tobias lacks clear and unmistakable evidence of the parties' intent to assign questions regarding the arbitrability of disputes with third parties to the arbitrator."); *Faire Wholesale, Inc. v. Tundra, Inc.*, 2023 WL 8586681, at *3 (N.D. Cal. Dec. 8, 2023) ("Nothing in the arbitration agreement remotely suggests Faire intended to arbitrate arbitrability with nonsignatories such as Tundra."); *Young v. ByteDance Inc.*, 700 F. Supp. 3d 808, 811 (N.D. Cal. 2023) ("[I]t makes no sense to interpret the delegation provision as reflecting an intent by Velez to allow an arbitrator to decide whether a dispute between her and TikTok is subject to arbitration."); *Safley v. BMW of N. Am., LLC*, 2021 WL 409722, at *4 (S.D. Cal. Feb. 5, 2021) ("[T]he Court must decide whether Defendant can enforce the arbitration agreement, including the contract's agreement to delegate arbitrability issues to the arbitrator."). Indeed, even if "the delegation provision itself does not refer to disputes 'between the Company and me' does not suggest that the parties intended for the delegation provision to cover people who were not parties to the agreement." *Young*, 700 F. Supp. 3d at 811.

In addition, the delegation clause is procedurally unconscionable because it is buried twelve sections into the Vimeo Terms, in the middle of a paragraph that is not titled "delegation," and separate from other provisions of the arbitration clause that discuss what claims must be arbitrated. *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1001 (9th Cir. 2021) ("With respect to unfair surprise, TForce presented the delegation clause in the middle of 31 numbered paragraphs, within more than nine pages of

single-spaced, 10-point font. Nothing in the text of the agreement called Lim's attention to the delegation clause, and Lim was not required to sign or initial that specific provision. This further supports some degree of procedural unconscionability."); *Pandolfi v. AviaGames, Inc.*, 2024 WL 3558853, at *3 (N.D. Cal. July 26, 2024) (finding delegation provision was procedurally unconscionable because "the clause is in the middle of 16 numbered paragraphs, most with multiple numbered subparagraphs, within 14 pages of single-spaced, 8-point font in barely readable, light gray text" and "as the clause is not even numbered, let alone titled, there is nothing in the text to call players' attention to the delegation clause") (cleaned up). Thus, the delegation provision should be struck regardless of whether it encompasses Plaintiff's claim against Defendant.

**B. Plaintiff's VPPA Claim Exists Independently Of—And Therefore, Does Not Relate To—The Vimeo OTT Player**

The arbitration clause in the Vimeo Terms encompasses "any dispute or claim arising out of or relating to … your use of the Vimeo OTT Service." Juraschek Decl. Ex. A § 10.1. Based on this language, Defendant contends "Plaintiff's VPPA claim against Yippee is predicated on her 'use of the Vimeo OTT Service' to subscribe to and receive Yippee's videos, and is, therefore, arbitrable." MTC at 11:8-10. Defendant is mistaken.

The Ninth Circuit's decision in *Jackson* is instructive (and binding). In that case, Amazon's arbitration clause encompassed "any dispute or claim arising out of or relating in any way to this Agreement, including participation in the program or performance of services." *Jackson*, 65 F.4th at 1095 (cleaned up). Despite this purportedly broad language, the Ninth Circuit found that claims based on Amazon's surveillance of Facebook groups solely made up of Amazon Flex drivers were not arbitrable because "Amazon's alleged misconduct existed independently of the contract and therefore fell outside the scope of the arbitration provision." *Id.* at 1104. Specifically, the Ninth Circuit rejected a but-for causation argument for relation that

"because Amazon would not have conducted its spying operations if Jackson had not been a Flex driver, the dispute must be arbitrable." *Id.* at 1103. Instead, the Ninth Circuit held the claims "existed independently" because "even if Jackson had no contract with Amazon but had been permitted to join the groups for some other reason, he would be able to bring the same claims for invasion of privacy." *Id.* at 1103-04.

*Jackson* also follows a long line of holdings from the Second, Fifth, Ninth, and Eleventh Circuits that rejected application of a broad arbitration clause to claims, like those here, that were independent of any contract. *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 183-84 (2d Cir. 2021); *Jones v. Halliburton Co.*, 583 F.3d 228, 240 (5th Cir. 2009); *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 799 (9th Cir. 2017); *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1219-20 (11th Cir. 2011). As these circuits have explained, the claims in each of these cases were not arbitrable because "the defendant could have engaged in the same conduct even in the absence of any contractual … relationship with the plaintiff, and a third party could have brought the same claims [] based on virtually the same alleged facts." *Welch*, 871 F.3d at 799 (cleaned up). Instead, claims must have "some direct relationship" or "direct connection" with even the broad language of a clause; "otherwise, the term would stretch to the horizon and beyond" or "be meaningless." *Doe*, 657 F.3d at 1218-19.[4]

So too here. Plaintiff's VPPA claim involves Defendant's sharing of her personally identifiable information with a third party. Compl. ¶ 6. It has no direct relationship to the Vimeo OTT player. Indeed, Plaintiff would still have a claim regardless of which OTT player Defendant elected to employ, and no matter how Defendant chose to play videos on its website or mobile application. And the claim is predicated on Plaintiff's subscription to Defendant's service, which is separate and

[4] To wit, Defendant's argument that "the scope of the arbitration provision is all-embracing" (MTC at 10:22) is without merit. There still must be a "direct relationship" between the claim and the language of the clause. *Jackson*, 65 F.4th at 1104 (cleaned up).

apart from the mechanism through which the videos are played (*i.e.*, the Vimeo OTT player).

Thus, Plaintiff's VPPA claim exists independently of and is "not dependent on [and therefore, does not relate to] the terms of the contract." *Jackson*, 65 F.4th at 1102; *see also Howard v. Goldbloom*, 30 Cal. App. 5th 659, 670 (2018) (finding claim was not arbitrable because "Defendants' fiduciary duties to minority shareholders and alleged wrongs exist independently of any employment relationship between Howard and Kaggle."). Further, to the extent there is ambiguity in the Vimeo Terms concerning whether Plaintiff's claim fall within the scope of the arbitration clause, "ordinary contract principles require that the provision be construed against the drafter's interpretation and in favor of the nondrafter's interpretation." *Sandquist*, 1 Cal. 5th at 248.

## CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied.

Dated: August 14, 2024

Respectfully submitted,

By: */s/ L. Timothy Fisher*
L. Timothy Fisher

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
jwilner@bursor.com

*Attorneys for Plaintiff*