ISABELLE ORD, (SBN 198224)
*isabelle.ord@us.dlapiper.com*
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, California 94105-2933
Telephone: 415.836.2500
Facsimile: 415.836.2501

ASHLEIGH L. ANGELETTI, (SBN 265392)
*ashleigh.angeletti@us.dlapiper.com*
OLIVER M. KIEFER, (SBN 332830)
*oliver.kiefer@us.dlapiper.com*
MATTHEW C. DANAHER, (SBN 351055)
*matt.danaher@us.dlapiper.com*
**DLA PIPER LLP (US)**
4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Telephone: 858.677.1400
Facsimile: 858.677.1401

*Attorneys for Defendant*
YIPPEE ENTERTAINMENT, INC.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

BRITTANY MORRISON, individually and on behalf of all others similarly situated,

Plaintiff,

v.

YIPPEE ENTERTAINMENT, INC.,

Defendant.

Case No. 3:24-CV-0797-MMA-KSC

**DEFENDANT YIPPEE ENTERTAINMENT, INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION**

Judge: Hon. Michael M. Anello
Dept.: 3C

Trial Date: Not Yet Set
Date Action Filed: May 3, 2024

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION ........ 1

II. ARGUMENT ........ 1

A. Plaintiff Assented to a Valid Arbitration Agreement ........ 1

B. Arbitrability Should be Decided by the Arbitrator ........ 5

C. Yippee Can Enforce the Vimeo OTT Terms ........ 7

1. The Vimeo OTT Terms Encompass Plaintiff's VPPA Claim ........ 7

2. Equitable Estoppel Compels Arbitration ........ 8

3. Yippee is a Third-Party Beneficiary of the Vimeo OTT Terms ........ 9

III. CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*AT&T Mobility v. Concepcion*,
563 U.S. 333 (2011) ........ 1

*Bentley v. Control Grp. Media Co., Inc.*,
No. 19-CV-2437, 2020 WL 3639660 (S.D. Cal. July 6, 2020) ........ 8, 9

*Berman v. Freedom Financial Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ........ 2, 3

*Burzdak v. Universal Screen Arts, Inc.*,
2021 WL 3621830 (N.D. Cal. Aug. 16, 2021) ........ 4

*Colgate v. JUUL Labs, Inc.*,
402 F. Supp. 3d 728 (N.D. Cal. 2019) ........ 4

*Cullinane v. Uber Techs., Inc.*
893 F.3d 53 (1st Cir. 2018) ........ 5

*Falcon v. TelevisaUnivision Digital, Inc.*,
No. 8:23-CV-02340, 2024 WL 1492831 (M.D. Fla. Mar. 29, 2024) ........ 5

*Fernandez v. Debt Assistance Network, LLC*,
No. 19-CV-1442, 2020 WL 583973 (S.D. Cal. Feb. 6, 2020) ........ 10

*Ghazizadeh v. Coursera, Inc.*,
No. 23-CV-05646, 2024 WL 3455255 (N.D. Cal. June 20, 2024) ........ 5

*Hunt v. Meta Platforms, Inc.*,
No. 5:23-CV-04953, 2024 WL 2503118 (N.D. Cal. May 24, 2024) ........ 9

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) ........ 8

*Kramer v. Toyota Motor Corp.*,
705 F.3d 1122 (9th Cir. 2013) ........ 6

*Lim v. TForce Logistics, LLC*,
8 F.4th 992 (9th Cir. 2021) ........ 6

*Lopez v. Terra's Kitchen, LLC*,
331 F. Supp. 3d 1092 (S.D. Cal. 2018) .......... 2

*Maree v. Deutsche Lufthansa AG*,
No. 20-CV-885, 2021 WL 267853 (C.D. Cal. Jan. 26, 2021) .......... 5

*McDaniel v. Home Box Off., Inc.*,
No. 22-CV-1942, 2023 WL 1069849 (S.D.N.Y. Jan. 27, 2023) .......... 5

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .......... 7

*Ngo v. BMW of N. Am., LLC*,
23 F.4th 942 (9th Cir. 2022) .......... 9

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016) .......... 4, 5

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) .......... 3

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) .......... 6

*Rocha v. Urban Outfitters, Inc.*,
No. 23-CV-542, 2024 WL 393486 (N.D. Cal. Feb. 1, 2024) .......... 4

*Sadlock v. Walt Disney Co.*,
No. 22-CV-9155, 2023 WL 4869245 (N.D. Cal. July 31, 2023) .......... 2, 3

*Saleh v. Udemy, Inc.*,
No. 23-CV-02207, 2024 WL 1231343 (D.N.J. Mar. 21, 2024) .......... 5

*Scriber v. Ford Motor Co.*,
No. 22-CV-1716, 2023 WL 7348461 (S.D. Cal. Nov. 7, 2023) .......... 9

*Smith v. Google, LLC*,
No. 23-CV-3527, 2024 WL 1171653 (N.D. Cal. Mar. 19, 2024) .......... 8

*Soltero v. Precise Distribution, Inc.*,
102 Cal. App. 5th 887 (2024) .......... 9

*Strehl v. Guitar Center, Inc.*,
No. 23-CV-2603, 2023 WL 9700041 (C.D. Cal. Nov. 3, 2023) .......... 4

*Tejon v. Zeus Networks, LLC*,
No. 24-CV-20498, 2024 WL 1293757 (S.D. Fla. Mar. 26, 2024) ........................ 4

*Wilson v. Hatch Bank*,
No. 23-CV-813, 2024 WL 1355492 (S.D. Cal. Mar. 29, 2024) ....................... 6, 9

*Wilson v. Redbox Automated Retail, LLC*
448 F. Supp. 3d 873 (N.D. Ill. 2020) .................................................................. 4

*Young v. ByteDance Inc.*,
700 F. Supp. 3d 808 (N.D. Cal. 2023) ................................................................ 6

**Statutes**

18 U.S.C. 2710 .............................................................................................................. 8

# I. INTRODUCTION

Plaintiff Brittany Morrison ("Plaintiff") agreed to Vimeo's OTT Viewer Terms of Service ("Terms") when she started her subscription to obtain video content from Defendant Yippee Entertainment, Inc. ("Yippee"). Because Plaintiff agreed to the Terms, she agreed to resolve *all* disputes related to her use of Yippee TV through mandatory arbitration. The Terms also provide that an arbitrator—not a court—should determine arbitrability. Plaintiff's Video Privacy Protection Act ("VPPA") claim should be compelled to arbitration, and an arbitrator should decide whether Plaintiff's claim is encompassed by the arbitration agreement contained in the Terms.

The Opposition is replete with inapposite case law that attempts to obscure the fact that Plaintiff consented to a valid and enforceable arbitration agreement, and the Federal Arbitration Act ("FAA") requires courts to rigorously enforce such agreements. The Opposition also entirely ignores binding precedent holding that where, as here, the parties' agreement incorporates JAMS' arbitration rules, there is clear and unmistakable evidence the parties agreed that an arbitrator should resolve any disputes over arbitrability. This Court's analysis can and should end there.

Even if the Court considered whether Yippee can enforce the Terms through equitable estoppel or as a third-party beneficiary, the result is the same: Plaintiff's VPPA claim must be arbitrated. The Court should grant Yippee's Motion to Compel Arbitration and stay this case.

# II. ARGUMENT

## A. Plaintiff Assented to a Valid Arbitration Agreement

The Opposition's protestations do not change the fact that Plaintiff assented to a valid and enforceable arbitration agreement that requires arbitration of her claim. (*See* Opp. at 2.) The FAA espouses a general policy favoring arbitration agreements, and courts are required to rigorously enforce an agreement to arbitrate. *See AT&T Mobility v. Concepcion*, 563 U.S. 333, 339 (2011). Here, Plaintiff had "reasonably conspicuous notice" of the agreement to arbitrate. Yippee's "hybrid between a

clickwrap and browsewrap agreement is binding where the consumer is provided with an opportunity to review the terms of service in the form of a hyperlink." *Lopez v. Terra's Kitchen, LLC*, 331 F. Supp. 3d 1092, 1098 (S.D. Cal. 2018) (Anello, J.).

In *Berman v. Freedom Financial Network, LLC*, the Ninth Circuit merely held that "the notice must explicitly notify a user of the *legal significance of the action she must take* to enter into a contractual agreement . . . [and] indicate to the user *what action would constitute assent* to those terms and conditions." 30 F.4th 849, 858 (9th Cir. 2022) (emphasis added). Both elements are clearly met here: Plaintiff had to "click below," to confirm her agreement in starting her subscription to obtain video content. In doing so, she "agree[d] to our Terms of Service, Cookies Policy, Privacy Policy, and automatic renewal."




The Terms are hyperlinked, appear in "blue, the color typically used to signify the presence of a hyperlink," and do not "appear[] in the same [color] font as the rest of the sentence." (*Id.* at 854.)

Plaintiff's selective citations to *Sadlock v. Walt Disney Co.* also fail to move the needle. (*See* Opp. at 6-7.) The Opposition ***omits*** that the *Sadlock* court also found "[t]he text used in the paragraph that refers to the Subscriber Agreement is . . . rather whitish/greyish in color, and thus does not stand out against the black background," No. 22-CV-9155, 2023 WL 4869245, at *9 (N.D. Cal. July 31, 2023), and that "the text used for the term 'Subscriber Agreement' – [which] although blue in color (which concededly indicates a hyperlink) – appears muted and thus does not stand

out against the black background." (*Id.* at *10.) Not so here. The blue hyperlinked text for "Terms of Service" uses "the color typically used to signify the presence of a hyperlink," *Berman*, 30 F.4th at 854, and also "stand[s] out against the [white] background." *Sadlock*, 2023 WL 4869245, at *9; *see also Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 516 (9th Cir. 2023) ("[C]rucially, the 'Terms of Use' hyperlink is conspicuously distinguished from the surrounding text in bright blue font, making its presence readily apparent."). In short, *Sadlock* is distinguishable.

In a failed attempt to argue she was not on "reasonably conspicuous notice" of the Terms, *Oberstein*, 60 F.4th at 515, Plaintiff offers a parade of flawed arguments.

First, she argues that the signup page includes "a 'Read More' button that unspools into three paragraphs of text" and "various emoji icons," which purportedly distract the user from the critical text. (Opp. at 8.) But nowhere in her Opposition does Plaintiff argue that ***she*** ever clicked the "Read More" button or encountered any of these elements when she agreed to the Terms to start her subscription, or that they "distracted" ***her*** attention. In other words, Plaintiff argues she cannot be compelled to arbitration because visual elements ***she did not encounter*** somehow deprived her of "reasonably conspicuous notice." For the same reasons, Plaintiff's counsel's declaration should be entirely disregarded. (*See* Decl. of Joshua R. Wilner, ECF 16-1.) While Plaintiff's counsel goes to great lengths to describe the appearance of the website when ***he*** visited the website on ***his*** device with ***his*** zoom settings applied, Plaintiff provides no attestation that she applied the same settings as her counsel or used a similar device when she agreed to the Terms and started her subscription one year earlier. (*See id.*) The Court's inquiry is whether ***Plaintiff*** was on notice of the Terms, ***not her Counsel*** months after the fact. In any event, the contention that the arbitration agreement is not enforceable simply because Plaintiff needed to scroll down the page ignores the fact that Plaintiff also needed to scroll down past the Terms hyperlink to click "Start Subscription," to become a subscriber in the first place.

Next, Plaintiff contends the blue hyperlink to the Terms was somehow "buried

within a large paragraph" and was the "smallest text on the page," (Opp. at 9-10) such that she lacked reasonably conspicuous notice of the Terms. Each of the cases cited in the Opposition in distinguishable.

In *Rocha v. Urban Outfitters, Inc.*, the court noted that "the hyperlinks are in a grey font" and appeared on a page that included order summary, contact, shipping, and payment information, and options to select delivery dates. *See* No. 23-CV-542, 2024 WL 393486, at *4 (N.D. Cal. Feb. 1, 2024). In *Burzdak v. Universal Screen Arts, Inc.*, the terms were "not highlighted by a different color which would also clearly connote a hyperlink." 2021 WL 3621830, at *6 (N.D. Cal. Aug. 16, 2021). In contrast, the hyperlink to the Terms is blue, listed *above* the Start Subscription button, and presented on a single transaction page with only one text column, not the myriad of other options contained on the Urban Outfitters page.[1] (Juraschek Decl., Ex. B.)

*Colgate v. JUUL Labs, Inc.* and *Wilson v. Redbox Automated Retail, LLC* both turned on a comparison between the hyperlink to the terms and a *more conspicuous* hyperlink elsewhere. *See Colgate*, 402 F. Supp. 3d 728, 765-766 (N.D. Cal. 2019) (comparing an underlined hyperlink for a forgotten password with a hyperlink to the terms that was not underlined *and* was a different color from the initial hyperlink); *Wilson*, 448 F. Supp. 3d 873, 885-86 (N.D. Ill. 2020) ("Viewing the Terms of Use hyperlink, in contrast with those more obvious hyperlinks, underscores that the Terms of Use hyperlink is not reasonably conspicuous.") Here, by contrast, all the hyperlinks on the signup page are the same color, and none are underlined, mitigating any confusion that concerned these courts. (Juraschek Decl., Ex. B.)

*Nicosia v. Amazon.com, Inc.* reviewed the district court's decision on a motion to dismiss, not a motion to compel arbitration as presented here. *See* 834 F.3d 220,

[1] This also distinguishes *Strehl v. Guitar Center, Inc.*, where the hyperlink at issue appeared in red, "rather than the traditional blue color typically used for hyperlinks," No. 23-CV-2603, *Strehl*, 2023 WL 9700041, at *7 (C.D. Cal. Nov. 3, 2023), and *Tejon v. Zeus Networks, LLC*, where the court noted "it is generally recognized that hyperlinks are usually displayed in a blue font," and declined to enforce terms where "the hyperlinks and related text are both in light gray font, not blue." No. 24-CV-20498, 2024 WL 1293757, at *3 (S.D. Fla. Mar. 26, 2024).

227 (2d Cir. 2016). Thus, the Second Circuit did "not hold that there was no objective manifestation of mutual assent here as a matter of law." (*Id.* at 238.) "Rather, we conclude simply that reasonable minds could disagree on the reasonableness of notice." (*Id.*) That distinction is critical here, where the Court is not limited to considering whether Plaintiff has "plausibly stated a claim for relief." (*Id.* at 235.)

Unlike *Maree v. Deutsche Lufthansa AG*, the Terms here are not "on a cluttered page nestled between several lines of extraneous, colored and bolded text." No. 20-CV-885, 2021 WL 267853, at *4 (C.D. Cal. Jan. 26, 2021). Nor was there a "large blue PayPal button" that "displaced the hyperlink to the bottom of the screen" as was the case in *Cullinane v. Uber Techs., Inc.* 893 F.3d 53, 63 (1st Cir. 2018). Instead, the Terms are hyperlinked in blue in the first sentence of a brief description of the user's subscription without any "extraneous, colored, and bolded text" above the "Start Subscription" button. (Juraschek Decl., Ex. B.)

In short, Plaintiff is attempting to both have her cake and eat it, too: She claims she is a Yippee "subscriber" to bring her VPPA claim, yet simultaneously argues she is not subject to that subscription's terms, including her agreement to arbitrate any dispute with Yippee stemming from the use of the platform. The Court should not endorse this absurd result.[2]

**B. Arbitrability Should be Decided by the Arbitrator**

The Opposition claims that "there is no 'clear and unmistakable evidence'" that Plaintiff and Vimeo agreed to delegate to an arbitrator arbitrability determinations for claims against third parties but fails to address the binding authority Yippee cited in its motion on this exact issue. (*See* Opp. at 21; Mot. at 10.)

[2] Courts routinely compel VPPA claims to arbitration when the Plaintiff had notice of the arbitration agreement, as Plaintiff did here. *See, e.g.*, *Ghazizadeh v. Coursera, Inc.*, No. 23-CV-05646, 2024 WL 3455255, at *15 (N.D. Cal. June 20, 2024); *Falcon v. TelevisaUnivision Digital, Inc.*, No. 8:23-CV-02340, 2024 WL 1492831, at *4 (M.D. Fla. Mar. 29, 2024); *Saleh v. Udemy, Inc.*, No. 23-CV-02207, 2024 WL 1231343, at *4 (D.N.J. Mar. 21, 2024); *McDaniel v. Home Box Off., Inc.*, No. 22-CV-1942, 2023 WL 1069849, at *4 (S.D.N.Y. Jan. 27, 2023). Like the plaintiffs in these cases, Plaintiff had sufficient notice of the Yippee Terms. This Court should follow other courts' lead in compelling Plaintiff's VPPA claim to arbitration.

Section 10.1 of the Terms expressly incorporates the JAMS Streamlined Arbitration Rules & Procedures. (*See* Juraschek Decl., Ex. A, § 10.1) The Opposition does not acknowledge that the Ninth Circuit has recently held that "[i]ncorporation of the JAMS arbitration rules by reference constitutes ***clear and unmistakable evidence*** that the parties agree to arbitrate arbitrability." *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 481 (9th Cir. 2024) (emphasis added). This decides the issue. The parties agreed to arbitrate arbitrability. Any dispute over whether these claims are arbitrable must be decided by an arbitrator.

In *Kramer v. Toyota Motor Corp.*, decided before *Patrick*, the arbitration clause was also "limited to claims between 'you and us'—i.e. Plaintiffs and the Dealerships." 705 F.3d 1122, 1128 (9th Cir. 2013). Here, the Terms simply state that an "arbitrator will decide all issues relating to the dispute, including the question of arbitrability." (Juraschek Decl., Ex. A, § 10.2.) The limiting language found in the *Kramer* delegation clause is absent and renders *Kramer* irrelevant. Moreover, unlike *Young v. ByteDance Inc.*, where "the arbitration agreement [was] crystal clear that it applie[d] only to disputes between [signatories]," 700 F. Supp. 3d 808, 811 (N.D. Cal. 2023)), the Terms provide that Producers like Yippee can enforce the arbitration agreement in disputes "between [users] and Vimeo." *See infra*, Section II.C.

Finally, while feigning an argument that the delegation clause is procedurally unconscionable, (*see* Opp. at 22-23), "the party opposing arbitration must demonstrate procedural ***and substantive unconscionability***." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1000 (9th Cir. 2021) (emphasis added). The Opposition makes no argument (and thus concedes) that the delegation clause is not substantively unconscionable. Without any showing of substantive unconscionability, the delegation clause is not itself unconscionable and should be enforced.[3] Accordingly,

[3] The authority cited in the Opposition recognizes as much. *See Wilson v. Hatch Bank*, No. 23-CV-813, 2024 WL 1355492, at *11 (S.D. Cal. Mar. 29, 2024) (while "the Court found above . . . a minimal degree of procedural unconscionability [,] considering the absence of any substantive unconscionability, Wilson's unconscionability argument fails.").

an arbitrator should resolve any dispute over arbitrability. Plaintiff's cited authority does not change this result.

### C. Yippee Can Enforce the Vimeo OTT Terms

Because arbitrability should be decided by the arbitrator, the Court should not reach the question of whether Yippee can enforce the Terms. But even if the Court decided arbitrability, Plaintiff should still be compelled to arbitrate her claim.

#### 1. The Vimeo OTT Terms Encompass Plaintiff's VPPA Claim

Plaintiff's Opposition fails to show why the Terms do not encompass Plaintiff's VPPA claim. The Terms' arbitration clause is broad and states, "the exclusive means of resolving any dispute or claim arising out of ***or relating to*** . . . your use of the Vimeo OTT Service shall be BINDING ARBITRATION." (Juraschek Decl., Ex. A, §10.1 (emphasis added).) Plaintiff's VPPA claim clears this low "relates to" threshold because her VPPA claim not only relates to the Vimeo OTT platform but cannot survive without her subscription to and use of Yippee TV.

Nevertheless, Plaintiff also claims that "Plaintiff's subscription to [Yippee's] service is separate and apart from the mechanism through which the videos are played (*i.e.*, the Vimeo OTT player.)." (Opp. at 24-25.) This is false. The arbitration clause applies to the "Vimeo OTT ***Service***," not the "Vimeo OTT *player*." (Juraschek Decl., Ex. A, §10.1 (emphasis added).) As the Juraschek Declaration states, "Yippee also utilizes the Vimeo OTT platform to process Yippee TV subscriptions and payment processing associated with those subscriptions." (Juraschek Decl., ¶ 7.) Plaintiff must prove that she was a Yippee TV "subscriber" for her VPPA claim to survive.

Critically, the Opposition does not attempt to distinguish any of the analogous cases from Yippee's Motion to Compel Arbitration. *See, e.g.*, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."). Instead, Plaintiff relies on inapposite cases in an unsuccessful attempt to mischaracterize the nature of Plaintiff's VPPA claim with regard to the Vimeo OTT platform.

In *Jackson v. Amazon.com, Inc.*, the plaintiff (an Amazon Flex driver) signed up for the program through a Terms of Service agreement "and communicated with other Flex drivers in closed, private Facebook groups." 65 F.4th 1093, 1095 (9th Cir. 2023). The plaintiff sued Amazon for allegedly surveilling these Facebook groups. (*Id.* at 1096.) The court denied the motion to compel arbitration because other third parties that hypothetically joined these Facebook groups "could likely assert the same claims against Amazon" regardless of affiliation with the Flex program. (*Id.* at 1102.)

Here, Plaintiff's claim is not one that "other individuals who were not [Yippee subscribers]" could otherwise bring. (*Id.*) Plaintiff could only bring her claim as a "subscriber" to Yippee TV and a user of the Vimeo OTT platform. This dooms Plaintiff's reliance on *Jackson* as well as the other cases the Opposition cites that only concern applying arbitration clauses to claims that exist independently of a relationship with the defendant. Here, Plaintiff's VPPA claim falls squarely within the scope of the Terms' arbitration clause.

**2. Equitable Estoppel Compels Arbitration**

Plaintiff's VPPA claim is wholly dependent upon ***obtaining*** Yippee content through the Vimeo OTT platform ***as a subscriber***. *See* 18 U.S.C. § 2710. To be a subscriber and obtain content on Yippee TV, Plaintiff was required to agree to the Terms. (Juraschek Decl., ¶ 15.) Thus, Plaintiff's agreement to the Terms and her subsequent decision to obtain "specific video materials" via the Vimeo OTT Platform is the "foundation" of her claim. 18 U.S.C. 2710(a)(3); *Bentley v. Control Grp. Media Co., Inc.*, No. 19-CV-2437, 2020 WL 3639660, at *4 (S.D. Cal. July 6, 2020) (applying equitable estoppel where the "[p]laintiffs' Complaint arises out of, relates to, and exploits the benefits of [] subscriptions" to the defendants' websites).

The subscriber relationship is an essential element of Plaintiff's VPPA claim and distinguishes each case the Opposition cites. *See Smith v. Google, LLC*, No. 23-CV-3527, 2024 WL 1171653, at *3 (N.D. Cal. Mar. 19, 2024) (finding plaintiff's claims were "fully viable without reference to the terms"); *Jackson*, 65 F.4th at 1103

("The alleged misconduct would be wrongful even if there had been no contract."); *Scriber v. Ford Motor Co.*, No. 22-CV-1716, 2023 WL 7348461, at *8 (S.D. Cal. Nov. 7, 2023) (claims premised upon the allegedly improper decision to manufacture vehicles with soon-to-be obsolete technology); *Soltero v. Precise Distribution, Inc.*, 102 Cal. App. 5th 887, 893 (2024) (violations of the California Labor Code).

In contrast, the VPPA claim here is "founded in or bound up with the terms," such that Yippee can enforce the arbitration agreement on equitable estoppel grounds. *Hunt v. Meta Platforms, Inc.*, No. 5:23-cv-04953, 2024 WL 2503118, at *3 (N.D. Cal. May 24, 2024). Notably, Plaintiff's ***own cited authority*** supports this proposition. *See Wilson*, 2024 WL 1355492, at *9 (applying equitable estoppel because "[i]f not for the TOS, Hatch Bank would have never been able to possess, let alone control, how Plaintiff's personal information would be handled."). And for good reason. Without Plaintiff's Yippee subscription and decision to obtain specific video materials through the Vimeo OTT platform, her VPPA claim would not exist. (Juraschek Decl., ¶¶ 4, 8.) Allowing Plaintiff to avoid arbitration with Yippee would allow her to unfairly "rely on a contract when it works to [her] advantage[] and repudiate it when it works to [her] disadvantage." *Bentley*, 2020 WL 3639660, at *3.

**3. Yippee is a Third-Party Beneficiary of the Vimeo OTT Terms**

Yippee can independently enforce the Terms as a third-party beneficiary. Yippee receives numerous benefits from the Terms, is empowered by the Terms to enforce them against subscribers, and expressly include ***"Producers"*** like Yippee such that Yippee's enforcement of the terms is a reasonable expectation of the parties.

The Opposition does not change this result. In *Scriber*, the Court merely held that "extraneous third parties may not compel arbitration." *Scriber*, 2023 WL 7348461, at *9 (quoting *Ngo v. BMW of N. Am., LLC*, 23 F.4th 942, 947 (9th Cir. 2022)). Here, Yippee is not an "extraneous third party," but rather a "Producer" that the Terms expressly include throughout. (*See* Juraschek Decl., Ex. A, § 11.)

The Opposition also confuses "expressly" with "exclusively." (*See* Opp. at

18.) Yippee does not argue that the Terms *exclusively* benefit Yippee, and that is not the standard for determining whether the third-party benefits from the contract. While the Terms provide benefits to Vimeo, they do not do so *exclusively*. Instead, the Terms also *expressly* provide numerous benefits to Yippee, including the ability to compel arbitration, indemnification in the instance of a subscriber's unauthorized use, and critical limitations on the license subscribers receive to stream Yippee's content. (*See* Juraschek Decl., Ex. A.)

The Opposition's cherry picking of specific provisions of the Terms that exclusively benefit Vimeo does not overcome the fact that "a motivating purpose of the contracting parties" was to benefit Yippee. (*See* Opp. at 19.) The numerous benefits conferred to Yippee by the Terms, including the disclaimer as to representations and warranties and limitation of liability, illustrate that "motivating purpose" clearly. (*See* Juraschek Decl., Ex. A, §§ 7-8.)

Similarly, Plaintiff's recycling of her lack of notice arguments does not change the fact that Yippee's enforcement of the arbitration agreement is consistent with "the reasonable expectations of the contracting parties." (*See* Opp. at 19.) Here, the Terms expressly define and extend to Producers like Yippee, (Juraschek Decl., Ex. A at 1), and the Terms underlie, "arise[] out of and, indeed, bolster[] the operation of" Yippee TV's platform. *Fernandez v. Debt Assistance Network, LLC*, No. 19-CV-1442, 2020 WL 583973, at *7 (S.D. Cal. Feb. 6, 2020) (Anello, J.).

**III. CONCLUSION**

Yippee respectfully requests that the Court grant its Motion to Compel Arbitration and that this case be stayed pending resolution of that arbitration.

Dated: August 26, 2024 DLA PIPER LLP (US)

By: */s/ Isabelle Ord*
ISABELLE ORD

*Attorneys for Defendant*
YIPPEE ENTERTAINMENT, INC.