UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRITTANY MORRISON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>YIPPEE ENTERTAINMENT, INC.,<br><br>Defendant. | Case No.: 24-cv-00797-JO-KSC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION [DKT. 13]** |

On October 30, 2025, the Court held oral argument on Defendant's motion to compel arbitration. For the reasons stated on the record and set forth below, the Court denies Defendant's motion.

First, the Court finds that there was no binding agreement to arbitrate because Plaintiff did not unambiguously manifest assent to the Terms of Service. For a user's click of a button to constitute an unambiguous manifestation of assent, the user must have been "explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir.

1

24-cv-00797-JO-KSC

2022). "Even strongly implicit advisement isn't enough." *Godun v. JustAnswer LLC*, 135 F.4th 699, 711 (9th Cir. 2025). Courts have found that unambiguous assent is present when there is an exact verbal match between the advisal language and the action constituting assent. *See Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1159 (9th Cir. 2025) (finding no assent where advisal language did not match button and providing examples of cases where advisal was sufficient because language matched). For example, a "Place Order" button unambiguously manifested assent when the advisal explained that "by submitting an order, the consumer 'confirms [he] ... agree[s] to our privacy policy and terms of use." *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024). Similarly, clicking a "Play" button unambiguously manifested assent to the terms of service when the screen advised that "[b]y tapping 'Play' I agree to the Terms of Service." *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1020 (9th Cir. 2024).

Here, the advisal language ("By clicking below, you agree to our Terms of Service, Cookies Policy, Privacy Policy, and automatic renewal") did not explicitly identify the button ("Start subscription") that would signal the consumer's assent. *See Chabolla*, 129 F.4th at 1158 (no unambiguous manifestation of assent where advisal read "[b]y signing up you agree to our Terms of Use and Privacy Policy," and the only clickable button below it read "Continue"). Customers were required to infer that "clicking below" referred to the action of clicking the "Start subscription" button when there were also two other hyperlinks (in blue text, to indicate that they were clickable) below the advisal, one entitled "Privacy Policy" and the other, "Terms of Service." *See* Dkt. 13-2, Ex. B. The presence of three places one could click "below" the advisal interjects some level of ambiguity and potential for confusion. *See Chabolla*, 129 F.4th at 1158 (where "the language could have been clearer . . . the resulting ambiguity is dispositive"). Therefore, even if an exact verbal match between advisal language and the button were not required under Circuit law, as Defendant argues, the Court cannot conclude there was unambiguous assent by the consumer.

Second, even if the Court were to find that Plaintiff agreed to the Terms of Service, it would still find that the arbitration agreement does not govern the dispute. As a threshold matter, the Court decides arbitrability because the parties did not clearly and unmistakably delegate that authority to the arbitrator. The clause in the arbitration agreement that delegates arbitrability applies to disputes between "you [i.e., consumers] and Vimeo," and makes no reference to disputes between consumers and third parties like Yippee. *See* Dkt. 13-2 ("Terms of Service") § 10.2. ("Both you and Vimeo are entitled to fundamentally fair proceedings at every stage of the arbitration, including the hearing (if any). The arbitrator will decide all issues relating to the dispute, including the question of arbitrability, and can grant any relief that a court could grant."). Because the delegation clause's terms are expressly limited to Vimeo and users, they indicate intent for the delegation to only apply to disputes between Vimeo and users. *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127 (9th Cir. 2013) (no clear and unmistakable evidence that plaintiffs agreed to arbitrate arbitrability with non-signatories because terms of agreement were expressly limited to non-party dealers and plaintiffs by clause stating that "[e]ither you or we may choose to have any dispute between you and us decided by arbitration.").

Defendant argues that because the arbitration agreement references third parties like Defendant who host websites on the Vimeo platform (called Producers in the agreement), the delegation clause also encompasses disputes with these third parties. The Court disagrees. In the section titled "Binding Arbitration with Producers," the arbitration agreement specifies that disputes between the consumer and third-party Producers will be included in the agreement only when a certain contingency is met: "[t]o the extent that the Producer has agreed to resolve disputes with consumers through arbitration in its agreements with Vimeo." Terms of Service § 10.7. Defendant has provided no evidence that this contingency has been met. It is therefore unclear whether the arbitration agreement applies to consumer disputes with third-party Producers, and, even it if did, the agreement makes no mention of whether the arbitrability of these disputes is delegated to

the arbitrator. In the absence of clear and unmistakable assent, the Court decides arbitrability, which includes the question of whether the dispute is covered by the arbitration agreement. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016).

Finally, the Court concludes that the arbitration agreement contained in the Terms of Service does not encompass the dispute at issue. Under the Terms of Service, the arbitration agreement only applies to disputes "arising out of or relating to this Agreement (including any alleged breach thereof), or your use of the Vimeo OTT Service." Terms of Service § 10.1. In addition, if a "Producer" "has agreed to resolve disputes with consumers through arbitration in its agreements with Vimeo," then any dispute "arising out of or relating to [a consumer's] purchase or viewing of a Producer's Program or subscription" is also subject to arbitration. *Id.* § 10.7. Here, Plaintiff's complaint alleges that Defendant Yippee (not Vimeo) used the Segment Application Programming Interface (API) to share Plaintiff's data with third parties for advertising purposes when Plaintiff accessed videos on Defendant's website. Dkt. 1 ¶¶ 54–56, 65. Plaintiff does not allege that this harvesting of consumer data and its transmission to third parties occurred through the operation of the Vimeo platform. And Defendant, who bears the burden of proving that the arbitration agreement covers the dispute at issue, has provided no evidence in support of this proposition—that it is Vimeo's platform, not Defendant's actions, that effects this alleged transmission of consumer data. Plaintiff's dispute therefore arises out of her "purchase or viewing" of Defendant's videos rather than her "use of the Vimeo OTT Service," and the arbitration agreement does not cover her claims unless § 10.7 applies. Section 10.7, in turn, only applies "to the extent" the producer has agreed with Vimeo to resolve consumer disputes through arbitration, and Defendant has failed to produce any evidence that this condition has been met. Therefore, the Court finds that the arbitration agreement does not cover Plaintiff's claims.

For these reasons, the Court denies Defendant's motion to compel arbitration [Dkt. 13].

**IT IS SO ORDERED**.

Dated: November 4, 2025

_____
Honorable Jinsook Ohta
United States District Judge